## ALBERT v. R. P. FARNSWORTH & CO., Inc.

### No. 12531.

United States Court of Appeals
Fifth Circuit.

July 22, 1949.

Kemble K. Kennedy, Baton Rouge, Louisiana, Calvin E. Hardin, Jr., Baton Rouge, Louisiana, for appellant.

Eberhard P. Deutsch, New Orleans, La., for appellee.

Before HUTCHESON, HOLMES and WALLER, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit, brought by the general contractor to whom a contract had been awarded, was for damages for the failure of a subcontractor to stand to, and comply with, his bid to furnish the furring, lathing, and plastering.

The claim was that, after plaintiff had used defendant's sub-bid in computing his general bid and after the general contract had been awarded, defendant, knowing that this was so, had undertaken to withdraw his bid and had refused to stand to, and perform work under it, and plaintiff had relet the work at a cost to it of $6,549.60 over defendant's bid.

The defendant, admitting that it had bid as alleged but insisting that before the bid had been accepted he had withdrawn his bid, denied that a binding contract had resulted.

Defendant's jury demand denied[1] and the cause tried to the court without a jury,

---

[1] Failing to demand a jury trial as of right under Rule 38, Federal Rules of Civil Procedure, 28 U.S.C.A., within the time it fixed, the defendant at a pretrial conference held on March 16th, by motion under Rule 39 invoked the discretion of the court to order a trial by jury. Whereupon the trial judge, without deciding the motion, stated: "This case will be set for trial whether before the judge or a jury on April 13, 1948."

On April 12, the motion for a jury trial came on to be heard. Whereupon defendant, pointing out that no prejudice could result to the plaintiff, that a jury was then present, and that there were seriously controverted questions of fact, urged upon the court to grant the motion. After some argument, there was a statement by the court, "It will turn largely on a question of law rather than on a serious question of fact", and by plain-

there were findings and a judgment for plaintiff.

One of these findings was in effect that the evidence had shown a universal custom in the building trade in Louisiana, that when a subcontractor furnishes a bid to a general contractor it is considered irrevocable after that bid has been used in the preparation of the general contractor's bid to the owner, and that if a subcontractor does not intend that his bid be so taken, it is customary for him to so state in his bid.

Based on the finding of custom, the court concluded: that once the bid of plaintiff in the case was accepted by the owner, it was too late for defendant to withdraw his proposal; that plaintiff had a reasonable time thereafter in which to call upon defendant to perform; and that he did call upon him in a reasonable time.

Urging upon us that his request for a jury, though late, should not have been denied and that the findings and judgment were clearly erroneous, defendant is here insisting that the judgment may not stand.

Conceding as to the jury demand that it was not made as of right, but pointing out: that it was made in ample time for a jury to be, and a jury was, available; that the denial of it was predicated on the expressed view that the case would turn largely on a question of law, rather than a serious question of fact; and that the decision was made to turn on a question of fact, the existence vel non of a binding custom; appellant insists that it was an abuse of discretion to deny it.

As to the judgment on the merits, appellant, insisting that a contract consisting of an offer and an acceptance is not completed until the acceptance by the person to whom it is proposed, invokes art. 1800 of the Civil Code of Louisiana providing: "The contract, consisting of a proposition and the consent to it, the agreement is incomplete until the acceptance of the person to whom it is proposed. If he, who proposes, should before that consent is given, change his intention on the subject, the concurrence of the two wills is wanting, and there is no contract."

Invoking art. 1819, defining "Consent" as a "concurrence of intention * * * reciprocally communicated", appellant points out that an acceptance is not communicated if the party proposing has not received knowledge of it even though the other party may have declared his intention and entrusted its delivery to agencies beyond his control, and that before plaintiff had communicated his acceptance of defendant's bid, defendant had withdrawn it. So pointing, he insists that the court erred in holding, on the basis of a purported custom and practice, that a completed agreement had resulted when by the positive provision of art. 1800, it is provided that "the agreement is incomplete until the acceptance of the person to whom it is proposed", and it is undisputed in the evidence that the bid or offer was withdrawn before it was so accepted.

He urges in addition that the court erred in admitting the evidence of custom because custom was not pleaded, and such evidence as was offered was offered over defendant's objection, and, finally, that the claimed custom was not proven in the clear and definite way required when proof of custom is resorted to.

The appellee, on its part, insists that the evidence, though admitted over the objection that there was no pleading to support it, was made competent by the motion of the plaintiff granted by the court to conform the pleadings to the evidence. To the objection that proof of custom will not vary positive law, the appellant replies the custom proved was not opposed to positive law but was in accordance with Articles 1802[2]

---

tiff's counsel, "That's our position", to which the court replied: "That is the court's view, and after studying the memorandum filed by counsel, the court's view is that the motion should be denied."

[2] Art. 1802 provides that the offerer "is bound by his proposition, and the signification of his dissent will be of no avail, if the proposition be made in terms, which evince a design to give the other party the right of concluding the contract by his assent; and if that assent

and 1809[3] of the Louisiana Civil Code, which state as an exception to the general rule Article 1800 lays down, that offers are revocable until accepted.

Appellee also strongly insists that the case is ruled by Harris v. Lillis, 24 So.2d 689, 691, in which the Orleans Court of Appeal in the course of an opinion affirming a finding that the bid had been accepted before it was withdrawn, added: "Moreover, it seems manifest that, in accordance with the custom prevailing in the building trade in New Orleans, an offer by a subcontracter to a general contractor to do work is irrevocable *after the contractor has used the estimate of the subcontractor as a basis for his offer to the owner and the owner has accepted the general contractor's bid.*" (Emphasis supplied.)

While we agree with appellee as to the force and effect of the code articles it cites, it is quite plain that the case was not tried or decided with those articles in mind, and we cannot agree with it that the case must be affirmed as though it had been properly tried or decided under them. Neither can we agree with appellee that the Harris case, the Court of Appeal decision relied on, is controlling here. The most casual reading of that opinion will disclose that the case was really decided on the testimony of the plaintiff that on Sept. 1, 1940, he formally mailed to the defendant his acceptance of the offer, that the defendant did not claim to have withdrawn the bid until Oct. 9, 1941, and that his offer, having been accepted before it was withdrawn, bound him.

It is quite plain that the part of the opinion which discusses a custom prevailing in the building trade in New Orleans, was not at all necessary to the decision of the cause, and, further, was not intended to lay down a general rule. It is the law in Louisiana as well as elsewhere; that a custom cannot be looked to to change a rule of law,[4] or to create a contract;[5] that a custom, when relied upon to take the place of a settled principle of law, must be as definite and specific in negativing the principle as the law which it assumes to supplant is in affirming it.[6] The evidence in this case, as to custom, is wholly wanting in the requisite certainty, generality,[7] and reasonableness.

In addition, the custom claimed to be controlling here was not pleaded, nor was it put forward or established in the definite and positive way required. It came in only as an afterthought suggested by questions asked by defendant of a witness for plaintiff, offered on an entirely different matter. This question was whether the witness had not known of cases where low bidders among subcontractors were not awarded the contract. Plaintiff, taking the witness on redirect, then proceeded to question him as to the custom in the building trade in Louisiana relative to the withdrawal of bids by subcontractors.

Defendant's objection that such custom was not pleaded overruled, plaintiff then endeavored to prove the custom on which it now relies. This testimony,[8] taken together does not at all show a general and reasonable custom understood by all in the

---

be given within such time as the situation of the parties and the nature of the contract shall prove that it was the intention of the proposer to allow".

[3] Art. 1809 provides: "The obligation of a contract not being complete, until the acceptance, or in cases where it is implied by law, until the circumstances, which raise such implication, are known to the party proposing, he may therefore revoke his offer or proposition before such acceptance, but not without allowing such reasonable time as from the terms of his offer he has given, or from the circumstances of the case he may be supposed to have intended to give to the party, to communicate his determination."

[4] 55 Am.Jur., Usages and Customs, Sec. 14, 17.

[5] 55 Am.Jur., Usages and Customs, Sec. 28.

[6] Federal Reserve Bank v. Malloy, 264 U.S. 160, 44 S.Ct. 296, 68 L.Ed. 617, 31 A.L.R. 1261.

[7] 55 Am.Jur., Usages and Customs, Sec. 27.

[8] In answer to the question, "Will you please tell us what custom, if any, prevails in the building trade in Louisiana relating to the withdrawal of bids made by subcontractors", the first witness, Mr. Coats, answered:

"Well, when we receive a bid, in fact, it is a custom in *the state for any gen-*

trade in the same way, general contractor and subcontractor alike. It presents the varying views of three general contractors as to the construction by general contractors of what they have a right to demand of, or do with, a subcontractor. As the testimony of the last witness shows, this so-called custom establishes no rights whatever in the subcontractor, to receive the contract, but only in the contractor to accept or reject the subcontractor's bid or start new dealings with him, as to the contractor seems fit. A claimed general custom which is no better proved and which has no more mutuality than this is neither legal, reasonable, nor binding, as a custom.

In Williams v. Favret, 5 Cir., 161 F.2d 822, 824, this court dealt with the other side of the picture. There the subcontractor, relying on the fact *that his bid had been used by the general contractor to secure a contract,* looked to the contractor to award him the subcontract. The contractor refused on the ground that he had not accepted the subcontractor's bid, and the dis-

trict court sustained the contractor. We affirmed the district judge, saying, "The bids remain open offers until accepted or withdrawn. That an offer does not ripen into a contract until acceptance is hornbook law."

The dissenting judge did not disagree at all with the principle announced. Seeing the facts differently, he thought there had been an acceptance. He stated in his dissent: "I agree with the majority opinion that it is hornbook law that an offer does not ripen into a contract until there is an acceptance".

It is true that in Favret's case the contract was to be performed in Mississippi and not in Louisiana, and that there was no attempt to prove a custom. It is true, too, that the shoe was on the other foot, the subcontractor, the party not favored by the so-called custom invoked here, was there suing the contractor, the favored party. But this serves to make only more clear the importance, when a custom of

---

eral contractor who receives a bid from a subcontractor that the subcontractor is bound to his proposal and he cannot withdraw it unless he had a stipulated reason in his bid to start off with, or a limitation, * * * but if there are no qualifications and time stipulation, *his bid is binding until he is given a contract from the general contractor.* In the event the general contractor is the successful bidder and is given the contract by the owner." (Emphasis supplied.)

The next witness, Mr. Gordon Lee, in answer to the same question, stated the custom differently. He declared:

"It is the universal custom that if a subcontractor gives a bid to a general contractor, *it is irrevocable after that bid has been used in the preparation of the general contractor's bid to the owners".* (Emphasis supplied.)

The third witness, Mr. McCann, asked the same question, answered:

*"Well I couldn't say that there is any custom established.* In other words, a man receives a bid, he accepts that bid under the same conditions that he is bidding a job, and he feels that his subcontractor is reliable and when he figures a job he is supposed to figure under the same conditions that the general contractor should."

"Q: If a subcontractor is desirous of submitting a bid for a subcontract with

a right of withdrawal prior to acceptance by the owner of the general bid, what does he do or what does he put into his bid on the subcontract? A: He generally adds a clause that the bid is to be accepted in a certain length of time".

On cross examination, he testified, in answer to the question, whether if the general contractor gets the job that necessarily means that he has to give the subcontractor job to the low bidder:

"No, I can truthfully say that the low bidder is not always used on the low bid because you are entitled to bid who you are dealing with."

"Q: Now, in your own practice, hasn't it occurred where for some reasons that you as a general contractor thought sufficient, you would not give the subcontract job to the low bidder? A: Yes, there have been occasions.

"Q: There the general contractor is the one who decides whether the reason is justifiable or not, isn't he? A: Not always, Sir. It has been a practice where the low man has been called in.

"Q: Then what happens? A: It is a deal between the contractor and the subcontractor at that time.

"Q: You mean the general contractor sometimes calls in the low bidder among the subcontractors and makes a new deal with him. A: Yes."

this kind is relied on, of pleading and proving it clearly. We are in no doubt that the proof of custom will not support the judgment, and that it must be reversed and the cause remanded for trial anew.

This is not to say, though, that on another trial, proof of a custom or practice would not be relevant in determining under Article 1802 of the Louisiana Civil Code, whether the proposition was made "in terms, which evince a design to give the other party the right of concluding the contract by his assent", and whether that assent was "given within such time as the situation of the parties and the nature of the contract shall prove that it was the intention of the proposer to allow", or under Article 1809, that the offer was made "allowing such reasonable time as from the terms of his offer he has given, or from the circumstances of the case he may be supposed to have intended to give to the party, to communicate his determination".

■ While, therefore, we cannot agree with the district judge that it "is the general law of Louisiana that once the bid of the general contractor is accepted by the owner, it is too late for the sub-contractor to withdraw his bid and that the general contractor has a reasonable time after the acceptance of the bid in which to call upon the subcontractor to perform", we are in agreement with the view that under the articles of the code appellee invokes, it is competent in a case of this kind to inquire whether there is evidence which brings the case within either of the exceptions to Article 1800, and, if there is, to determine the case in accordance with the findings upon that evidence.

■ As to the motion for trial by jury, while the right to a jury in a federal court, as declared by the Seventh Amendment is a basic and fundamental feature of our system,[9] we are of the opinion that, because of the lateness of the demand, denial was not error. We are of the further opinion, however, that if upon remand the discretion of the court is invoked under Rule 39 (b) by a timely motion for a jury trial, the court may, and, in the absence of strong and compelling reasons to the contrary, should grant the motion.[10]

The judgment is reversed and the cause is remanded for trial anew consistent herewith.

---

[9] S. S. Kresge Co. v. Holland, 6 Cir., 158 F.2d 495; Jacob v. City of New York, 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166.

[10] Cf. Roth v. Hyer, 5 Cir., 142 F.2d 227.