162 So.2d 713 (1964)
COX-HARDIE COMPANY, Inc.
v.
Stanley G. RABALAIS.
No. 1302.
Court of Appeal of Louisiana, Fourth Circuit.
April 6, 1964.
Arthur A. de la Houssaye, New Orleans, for plaintiff-appellee.
Gaudin & Edwards, Robert D. Edwards, Gretna, for defendant-appellant.
Before HALL, TURNER and BARNETTE, JJ.
HALL, Judge.
Plaintiff, a general contractor engaged in the construction business, requested defendant, a sub-contractor, to submit a bid for the painting and sheet rock work called for by the plans and specifications prepared by Oubre and Wagner, architects, for the erection of an apartment building for Jorby Corporation. Defendant secured a copy of the plans and specifications and on May 3, 1960 submitted his written bid to plaintiff offering to perform such work "according to plans and specifications" for the sum of $8,358.00.
Thereafter plaintiff submitted its bid to Jorby Corporation for the erection of the apartment building, using in the preparation of its own bid the bid submitted by defendant.
On May 6, 1960 plaintiff was notified by Jorby Corporation that it was the low bidder on the apartment building. A few days thereafter plaintiff notified defendant that his bid was accepted and that he would get the painting and sheet rock sub-contract.
On June 8, 1960 the general contract was signed between plaintiff and Jorby Corporation, and on or about June 15, 1960 plaintiff notified defendant of this fact and again informed him that his bid had been accepted *714 and that a formal sub-contract would in due course be forwarded to him for execution. Defendant informed plaintiff at this time that he had "been thinking about" getting out of the painting business and stated that he would like to get someone else to take over the job and suggested that plaintiff see if a sub-contractor named Groetsch would not do so. Upon being contacted on or about June 24, 1960, Groetsch informed plaintiff that he couldn't do the job for the amount bid by defendant. The following day Groetsch discovered that defendant had made an error in figuring his bid having omitted to include therein the cost of the outside painting called for by the plans and specifications.
On July 8, 1960 plaintiff forwarded a formal sub-contract to defendant for his signature, which defendant refused to sign.
Defendant denied having a contract with plaintiff and refused to perform the work. After such refusal plaintiff notified defendant that it would have the work performed by someone else and would hold him responsible for any excess cost over his bid.
Plaintiff had the work performed by Johnson General Painting Company at a cost of $2,242.00 in excess of defendant's original bid of May 3, 1960 and brought suit to recover this amount from defendant. Judgment was rendered in plaintiff's favor as prayed for and defendant appealed.
Defendant concedes that his bid was accepted by plaintiff before any effort was made to withdraw it and concedes that he would be bound thereby had it not been the intent of both parties that a formal written sub-contract would be executed. Defendant further contends that when the formal written sub-contract was submitted to him it became a counter-offer which defendant did not accept and therefore no contract ever came into being.
By submitting a bid "according to plans and specifications" defendant incorporated therein by reference everything in the plans and specifications pertaining to the painting and sheet rock work. When his bid was accepted verbally all of the terms and details of the agreement were complete. There is nothing in the record from which we can infer that the parties intended that they would not be bound unless and until a formal sub-contract was executed.
As far as the record shows the formal sub-contract was plaintiff's idea alone and was submitted by it to defendant merely to evidence what had already been agreed to. It contained no terms that had not already been agreed to and can in no sense be considered a counter-offer.
In McIntire v. Industrial Securities Corporation, La.App., 158 So. 849 this court said:
"It is undoubtedly true that where, as in the Laroussini Case [v. Werlein, 52 La.Ann. 424, 27 So. 89], although the parties agree upon all the terms, and yet both understand that the said terms are to be reduced to writing, and that on the execution of the said written document the contract shall come into being, there is no contract until the document is signed, and it is also true that where, as in the Knights of Pythias Case, the parties have agreed to all the essential terms and the agreement is complete in itself, the refusal of one of the parties to sign the written document merely evidencing what has already been agreed to does not destroy the effect of the contract already verbally assented to * * *." (Emphasis supplied) See Knights of Pythias v. Fishel et al., 168 La. 1095, 123 So. 724.
Defendant further contends that he is not bound by his bid of May 3, 1960, regardless of whether it was the intention of plaintiff and defendant to enter into a formal written contract. He argues that a sub-contractor's bid does not become irrevocable merely because it has been used by the contractor in the preparation of its bid for the general contract. In this connection defendant *715 cites and relies heavily upon the decision in Albert v. R. P. Farnsworth & Co., Inc., U.S.C.A. Fifth Circuit, 176 F.2d 198. In that case the general contractor used the sub-contractor's bid in computing its general bid and contended that under the universal custom in the building trade such use made the sub-bid irrevocable. The court held that the evidence did not support the finding of such a universal custom and that the sub-contractor had a right to withdraw his bid before it was accepted by the contractor. In the Farnsworth case the contractor had not accepted the sub-bid either verbally or in writing.
Defendant entirely overlooks the fact that in the case at bar plaintiff had actually accepted the sub-bid before defendant made any effort to withdraw, and that plaintiff's claim is predicated on such acceptance and not on the fact that it made use of the sub-bid in computing its general bid. See Harris v. Lillis, La.App., 24 So.2d 689.
Defendant contends that he made a mistake of $2,242.00 in his estimate by omitting to include the cost of the outside painting and that he should on that account be relieved of his contract, citing Harrelson v. Raphael, La.App., 116 So.2d 301. In that case a contractor submitted a bid to the owner covering certain repairs on the owner's premises. The bid was separated into three different items which were improperly totaled by the contractor. The owner himself had noticed the contractor's mistake in addition and tried to take advantage of it. The court held this was no meeting of the minds and no contract. The court stated however that "Had the defendant not himself totaled the three items, we feel that we would encounter difficulty in holding him liable for more than the total set forth on the document which was prepared by the plaintiff."
In the instant case the error was not ascertained until after plaintiff had accepted defendant's bid and had submitted its bid to the owner. Plaintiff was ignorant of the error until some time thereafter, and in no way profited by it. Defendant cannot be relieved of his carelessness. Where one of two innocent parties must suffer the one who caused the error must suffer the consequences. See Harris v. Lillis, supra; Schorr v. Nosacka, 16 La.App. 20, 132 So. 524; Reimann Const. Co. v. Heinz, 17 La. App. 687, 137 So. 355.
Defendant contends alternatively that should the court hold there was a valid contract between the parties, plaintiff did not properly seek to minimize its loss.
Defendant testified that on August 19, 1960 he telephoned plaintiff's secretary to discuss the matters which had arisen between them and during the conversation he offered to do the job for $1,000.00 more than his original bid which would allow him to break even on the job without any profit, but that his offer was declined. Plaintiff's secretary testified that he remembered holding the telephone conversation but had no recollection of such an offer being made. The District Judge evidently concluded that no such offer was made and we find no manifest error in that conclusion.
Plaintiff testified that he gave the job to the next lowest bidder after having ascertained that one one could be found who would do the job for less. Metal Building Products Company, Inc. v. Fidelity and Deposit Company of Maryland, La.App., 144 So.2d 751, cited by defendant is inaposite because in that case the contractor admitted it could erect the material for less cost.
For the foregoing reasons the judgment appealed from is affirmed, costs of this appeal to be borne by appellant.
Affirmed.