**MESA PETROLEUM COMPANY, Plaintiff–Appellee,**

v.

**C. John CONIGLIO and C. A. Locke, Jr., Defendants–Appellants,**

**Diamond T Cattle Co., Inc. and John Coniglio, Jr., Defendants.**

**No. 78–3600.**

United States Court of Appeals, Fifth Circuit.

Nov. 3, 1980.

Steven H. Gray, Ocala, Fla., for defendants–appellants.

Richard G. Rumrell, Jacksonville, Fla., Barry F. Cannaday, D. Don Dent, Amarillo, Tex., Keith E. Hope, Miami, Fla., for plaintiff–appellee.

Before BROWN, HENDERSON and SAM D. JOHNSON, Circuit Judges.

HENDERSON, Circuit Judge:

Mesa Petroleum Company (hereinafter referred to as "Mesa") brought this diversity action in the United States District Court for the Middle District of Florida against Diamond T Cattle Company (hereinafter referred to as "Diamond T"), C. John Coniglio and C. A. Locke, Jr. seeking enforcement of certain promissory notes executed by the individual defendants and a joint venture agreement between Mesa and Diamond T. The district court entered judgment in favor of Mesa, and Coniglio and Locke appeal. We affirm.

Coniglio, Locke and William Hallauer[1] are the sole and equal shareholders of Diamond T, a Florida Corporation. Mesa, a corporation organized under the laws of Delaware, has its principal place of business in Amarillo, Texas. On June 6, 1972, Mesa and Diamond T entered into a joint venture agreement which provided that Diamond T would acquire and graze cattle in Florida and then send them to Texas for fattening and sale by Mesa. The expenses of the venture were to be shared equally, with Mesa advancing most of the necessary operating capital. By July of 1973, the expenses of the joint venture had increased to the extent that further direct advances by Mesa became impracticable. Hence, the joint venture agreement was amended on July 31, 1973 to authorize Mesa to obtain bank financing to generate additional funds for the operation of the joint venture.

In accordance with this amendment, a loan agreement and a promissory note payable to the First National Bank of Amarillo and other banks (hereinafter referred to as

---

1. Hallauer was not a party to this action, apparently having conceded his indebtedness to Mesa.

"the Bank") were signed by Mesa and Diamond T as debtors, and Coniglio, Locke and Hallauer as individual guarantors. The loan agreement provided for a $3.5 million line of credit, to be secured by cattle and receivables at 75% of the current market value of the cattle. Mesa was required to furnish regular certificates of compliance assuring the Bank of the value of the collateral.

During the year 1974, there was a serious decline in the cattle market and the venture began to lose money. The market value of the cattle owned by the joint venture fell, causing the Bank's security interest to become approximately $1 million out of compliance. The Bank, which had the right to accelerate the loan, demanded that this situation be remedied.

In July of 1974, a meeting was held in Dallas, Texas between Coniglio, as representative of Diamond T, Ronald Bassett, Comptroller of Mesa Agro (a division of Mesa Petroleum Company), and a Mesa attorney. Although conflicting testimony was presented at trial, the district court accepted Bassett's version of the Dallas meeting. Coniglio was advised that Diamond T's share of the total projected losses of the venture was $425,000.00, and that Mesa was unwilling to advance additional monies without first obtaining the personal guarantees of the shareholders of Diamond T that its share of the losses would be reimbursed. Coniglio promised on behalf of the principals of Diamond T that each of the shareholders would execute equal individual promissory notes to Mesa, totaling $425,000.00, if Mesa would agree to advance the money necessary to bring the loan back into compliance. It was further agreed that appropriate adjustments would be made on the individual shareholders' liabilities to Mesa if Diamond T's share of the losses was ultimately determined to be less or greater than $425,000.00 On August 6, 1974, Mesa advanced $1,170,000.00 to the joint venture. With these funds, the joint venture was able to satisfy the entire loan obligation.

In accordance with the agreement reached at the Dallas meeting, Locke and Coniglio each executed and mailed to Mesa a personal promissory note payable to "Mesa Argo" (an unintentional misspelling of "Mesa Agro") in the amount of $141,-666.67, representing one-third of the projected $425,000.00 losses. Accompanying the notes was a cover letter written by Coniglio to the following effect:

Enclosed herewith please find notes from myself and Mr. Locke as evidence that we are indebted in some amount to be determined.

By giving these notes, we are not waiving any rights or cause of action I may have against Mesa Argo, or any other persons in the joint venture, nor will I take advantage of any action any other party may have against me by virtue of the notes being divisible.

Four days before executing his promissory note, Locke, along with his wife, conveyed certain real property to Coniglio and his wife for no consideration. This property represented Locke's total net worth. On the day after Coniglio signed his promissory note, he and his wife encumbered the property conveyed to them by the Lockes to the Federal Land Bank of Columbia, South Carolina, as security for a loan to Coniglio in the amount of $500,000.00. On December 17, 1974, Coniglio and his wife transferred certain other real property for no consideration to their son, who in turn executed a quit–claim deed back to Coniglio.

The joint venture was terminated on December 1, 1974, and Diamond T's share of the losses was finally determined to be $477,822.00, $52,872.00 more than the projected figure. Coniglio and Locke were notified of the additional losses on March 11, 1975, and were requested to pay the face amount of the notes, plus the sum of $17,-642.00 each. They refused to pay, and this suit followed. On October 13, 1978, judgment was entered against Locke and Coniglio in the equal amounts of $159,290.67. A subsequent order, dated December 26, 1978, awarded Mesa attorney's fees and imposed a lien and equitable trust on real property held by Coniglio.

The district court determined Coniglio and Locke to be obligated to Mesa under three distinct theories. Specifically, the court held that Coniglio and Locke entered into a binding oral contract with Mesa to pay their share of the losses suffered by Diamond T, that their promissory notes were supported by valid consideration, and that they were estopped to deny the enforceability of their promise to reimburse Mesa. We first consider these theories of recovery, and then address the appellants' remaining challenges to the judgment.

■ The district court found that the parties entered into a binding oral contract at the Dallas meeting; their intent to be bound was evidenced by their conduct, the promissory notes and the exchange of letters. We agree with this assessment. We note at the outset that the Florida choice of law rules apply in this diversity action. *See Calloway v. Manion*, 572 F.2d 1033 (5th Cir.1978). Florida law instructs that the validity of the purported oral contract and the nature of the obligations thereunder are governed by the substantive law of Texas. The parties stipulated in the overall joint venture agreement that Texas law would control, *see Hirsch v. Hirsch*, 309 So.2d 47 (3rd DCA Fla.1975), and the agreement was entered into in that state, *see Boat Town U.S.A., Inc. v. Mercury Marine Division of Brunswick Corp.*, 364 So.2d 15 (3rd DCA Fla. 1978); *Carriers Insurance Co. v. LeRoy*, 309 So.2d 35 (3rd DCA Fla. 1975). Under Texas law, if the parties so intend, an oral contract is binding from the time it is made even though the parties also agree that a formal writing embodying its provisions will subsequently be prepared. *Mechanical Wholesale, Inc. v. Universal–Rundle Corp.*, 432 F.2d 228 (5th Cir.1970) (applying Texas law); *Vick v. McPherson*, 360 S.W.2d 866 (Tex.Civ.App.–Amarillo 1962, writ ref'd n. r. e.). Here, approximately one and a half months after the Dallas meeting, Coniglio and Locke each executed a promissory note for one–third of Diamond T's estimated share of the joint venture losses. The accompanying letter explained that the notes were "evidence that [Coniglio and Locke were] indebted in some amount to be deter-mined." This written evidence, in conjunction with Bassett's testimony as to what transpired at the Dallas meeting, is adequate support for the district court's finding that a binding oral agreement existed between the parties. Moreover, Mesa's action in actually advancing $1,170,000.00 to the enterprise prior to the execution of the promissory notes also manifests the parties' intentions to be bound as of the time of the Dallas meeting.

■ The appellants maintain that the existence of a valid oral contract is precluded by the parties' failure to negotiate and agree upon certain essential terms. Under Texas law, the omission of any essential element renders a contract unenforceful. *See Page and Wirtz Construction Co. v. VanDoran Bri–Tico Co.*, 432 S.W.2d 731 (Tex.Civ.App.–Amarillo 1968, writ ref'd n. r. e.). The specific terms which are suggested to have been omitted in the instant case are the precise amount to be paid under the contract, the exact date of payment, and the rate of interest. Mesa persuasively argues that the parties, while not arriving at an exact figure, did agree upon a formula for determining the sums to be paid by Coniglio and Locke. The payment due from each appellant was to be one–third of Diamond T's ultimate share of the joint venture losses, and, indeed, each of the promissory notes eventually executed was payable to Mesa in an amount equal to one–third of the total losses as projected at that time. Thus, although the parties did not settle upon a specific monetary obligation, the terms of the contract rendered the amounts owed thereunder susceptible of proof. *See Morgan v. Young*, 203 S.W.2d 837 (Tex.Civ.App.–Beaumont 1947, writ ref'd n. r. e.).

With respect to the date of payment, Bassett testified that the parties agreed at the Dallas meeting that the notes would become due six months from the date of their execution. The notes did, in fact, call for payment at such time. As we noted previously, the district court credited Bassett's, rather than Coniglio's, account of the

Dallas meeting, and this credibility resolution is not seriously challenged by the appellants.

■ Finally, Mesa insists that the parties understood that the appellants would pay no interest. Significantly, the promissory notes which were eventually executed contained the word "none" in the space provided for the interest rate, and these notes were agreed to and accepted by Mesa in writing. In light of the cumulative evidence, we are in accord with the district court's determination that the parties agreed upon all essential terms and entered into a binding oral contract when they met in Dallas in July of 1974.

■ We also agree with the district court's conclusion that Coniglio and Locke are estopped from denying the enforceability of their promise to pay their shares of the losses sustained by Diamond T.[2] The appellants do not challenge the district court's finding that Coniglio made a promise which was reasonably calculated to, and did, induce action on the part of Mesa. However, they do contend that the doctrine of promissory estoppel does not apply because one of its elements, detriment to the promisee, is absent from the facts of this case. *See Travelers Indemnity Co. v. Holman*, 330 F.2d 142 (5th Cir.1964) (action or forbearance of the promisee must amount to a substantial change of position) (applying Texas law). More precisely, the appellants maintain that, since Mesa was at all times directly obligated on the joint venture's note payable to the Bank, it incurred no detriment by advancing the money necessary to pay off the loan. This assertion, though logically valid, ignores the realities of Mesa's predicament. As Mesa points out, by satisfying the loan, it effectively extinguished the Bank's rights of action against Diamond T, Coniglio and Locke. If the Bank had been forced to institute suit in an attempt to collect the outstanding loan, it quite likely would have proceeded against all parties who signed the note–Mesa, Diamond T, Coniglio, Locke (and Hallauer). We need not engage in speculation to suggest that at least some small part of Diamond T's share of the loan balance would have been recovered from someone other than Mesa. We must also take into consideration the fact that, at the time Coniglio's promise was made, the joint venture agreement was terminable at will by either party. Thus, instead of advancing money to the partnership, Mesa could have terminated the joint venture immediately. Had it done so, its share of the losses would have been limited to $425,000.00. In paying off the loan and allowing the business to continue, Mesa ultimately suffered an additional loss of $52,872.00. Under these circumstances, we cannot agree with the appellants' argument that Mesa did not detrimentally change its position in reliance on the promise made to it at the Dallas meeting.

■ As a third basis for allowing Mesa to recover, the district court held that the promissory notes executed by Locke and Coniglio were supported by valuable consideration and that they are enforceable. Under § 3–408 of the Uniform Commercial Code, as adopted by Florida, Fla.Stat. § 673.3–408, and Texas, Tex.Bus. & Comm. Code § 3.408, a note given in satisfaction of an antecedent obligation is enforceable. In this instance, the notes of Coniglio and Locke satisfied their prior promise to pay their shares of Diamond T's existing and projected losses. In return for this promise, Mesa agreed to, and did in fact, pay off the

---

**2.** The promissory estoppel doctrine is stated in § 90 of the Restatement of Contracts as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Promissory estoppel has been successfully invoked as a theory of recovery in Texas where the contract has been held unenforceable for the reasons asserted by the appellants here *i.e.*, the omission of essential terms. *See Associated Tabulating Service, Inc. v. Olympic Life Insurance Company*, 414 F.2d 1306 (5th Cir.1969) (applying Texas law); *Wheeler v. White*, 398 S.W.2d 93 (Tex.1965).

joint venture's obligations, thereby relieving Coniglio and Locke of their individual liabilities as guarantors of the promissory note previously executed in favor of the Bank. Although Mesa asserts several other grounds to support its entitlement to judgment on the promissory notes, we need not look beyond these basic facts to conclude that the notes are valid and enforceable.[3]

We next consider the appellants' claim that the district court abused its discretion in refusing to grant a jury trial. At this point, it is necessary to trace the events leading to the denial of the appellants' motion.

Mesa's original complaint, filed on July 1, 1975, contained no request for jury trial. On August 29, 1975, Coniglio and Locke each filed an answer to the complaint, a motion for summary judgment, and a counterclaim against Mesa and its vice president, Gaines L. Godfrey, which basically alleged a cause of action in the nature of libel and slander. Demand for jury trial was made only with respect to the two counts contained in the counterclaims. Mesa filed a motion to dismiss the counterclaims on September 18, 1975.

■ In an order dated February 26, 1976, the district court dismissed the complaint, reserving a decision on Mesa's motion to dismiss the counterclaims. Mesa filed an amended complaint on March 26, 1976. The appellants answered, again failing to demand a jury trial. The counterclaims were dismissed without prejudice on April 15, 1977. Thus, at this juncture, aside from the

two counts for libel and slander asserted in the counterclaims, the appellants had served no timely demand for jury trial as required by Fed.R.Civ.P. 38(b).[4] The failure to make such demand constitutes a waiver under Fed.R.Civ.P. 38(d).[5]

On the same day the counterclaims were dismissed, the court sent notices of trial to all attorneys of record indicating that the matter would be tried by a jury on September 6, 1977. The trial was subsequently rescheduled for a date in October of that year. At a pretrial conference held on September 13, 1977, the appellants' attorneys were advised by the court that the case would not be tried by jury. Two days later, Coniglio and Locke filed a motion for jury trial pursuant to Fed.R.Civ.P. 39(b).[6] The district court denied this motion on September 19, 1977.

■ The appellants maintain that their failure to serve timely demand pursuant to Rule 38(b) was attributable to the complexity of the pleadings and the confusion caused by the April 15th order which purported to set the case for trial by jury. However, Mesa stresses that the counterclaims, the only pleadings containing demands for jury trial, were dismissed *without prejudice* on the same date. Therefore, it stands to reason that if Coniglio and Locke had exercised their opportunity to amend their counterclaims, a jury trial on the issues asserted therein would have been appropriate. Moreover, the district court's action in setting the case for trial by jury,

---

3. The conditional delivery argument propounded by the appellants is without merit. This defense was not affirmatively plead below, *see* Fed.R.Civ.P. 8(c), and the purported condition · final determination of the joint venture losses has unquestionably been met.

4. Rule 38(b) provides:

Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be endorsed upon a pleading of the party.

5. Rule 38(d):

The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

6. Rule 39(b) reads as follows:

Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

whether intentional or inadvertent, could not, in and of itself, have remedied the appellants' failure to make a jury demand with respect to the issues raised in the complaint and amended complaint. A Rule 39(b) motion is necessary to relieve a party from waiver; the court cannot grant relief on its own initiative. *Swofford v. B&W, Inc.*, 336 F.2d 406 (5th Cir. 1964).

The relevant inquiry, then, is whether, once the appellants did seek to remedy their waiver by filing a Rule 39(b) motion, the district court abused its discretion under that rule by denying the requested relief. While we are cognizant of the general principle that a court should grant a jury trial in the absence of strong and compelling reasons to the contrary, *Swofford, supra; Albert v. R. P. Farnsworth and Co.*, 176 F.2d 198 (5th Cir. 1949), we find no abuse of discretion in this case. Indeed, the facts before us are comparable to those in *Farnsworth*, where the request was held to have been properly denied. There, the Rule 39(b) motion was made in ample time for a jury trial to be utilized and a jury was, in fact, available. However, in this court's opinion, the request for trial by jury, having been made at a pretrial conference less than a month before the case was scheduled for trial, came too late. Here, the appellants raised the jury trial issue subsequent to the pretrial conference, more than two years after the original complaint was filed, almost five months after Mesa filed its amended complaint, and less than one month before the trial date. Under these circumstances, the district court acted within the bounds of its discretion in denying the motion. *Accord, First Wisconsin National Bank of Rice Lake v. Klapmeier*, 526 F.2d 77 (8th Cir. 1975).

The remaining grounds raised by the appellants concern the order of December 26, 1978, in which the district court awarded Mesa attorney's fees and imposed a lien and equitable trust in its favor on certain real property found to have been fraudulently conveyed. Although Mesa questions the appealability of these issues,[7] we have examined them and have found the appellants' contentions lacking in merit.

Coniglio and Locke maintain that the district court erred in finding that the conveyances which they and their wives transacted shortly before and after the execution of the promissory notes were fraudulent. The court's determination that these conveyances were made without valid consideration and with the intent to defraud Mesa is not clearly erroneous and, indeed, seems virtually unassailable. However, it appears that, under Florida law, the proper-

7. Actually, Mesa suggests that we lack jurisdiction over the entire appeal. Its reasoning is that the district court entered two orders, neither of which adjudicated all the claims of the parties, and neither of which was accompanied by Fed.R.Civ.P. 54(b) certification. Of course, as a general rule, this court's appellate jurisdiction extends only to final orders. 28 U.S.C.A. § 1291. However, since the October 13th and December 26th orders had the combined effect of terminating the litigation, we believe our jurisdiction is safely established by the rule enunciated in *Jetco Electronics Industries, Inc. v. Gardiner*, 473 F.2d 1228 (5th Cir. 1973).

Of greater concern is the fact that the appellants filed a notice of appeal only with respect to the October 13th order, while the award of attorney's fees and the imposition of the trust and lien were accomplished in the December 26th ruling. Thus, Mesa contends that these issues are not properly before us, relying on this court's opinion in *Cole v. Tuttle*, 540 F.2d 206 (5th Cir. 1976). The *Cole* facts, however, were much more compelling than those here.

In *Cole*, one group of defendants was dismissed from the action in an interlocutory order entered in 1973. The case continued to trial against the remaining defendants, and orders were entered in October of 1975 which denied injunctive relief and refused the grant of attorney's fees. The plaintiffs filed notices of appeal which specifically referred to each of the 1975 rulings, but which contained no mention of the 1973 order. On appeal, the plaintiffs sought to challenge the 1973 dismissal, and this court correctly refused to allow them to do so.

In the instant case, the October 13th order was labeled the "Final Judgment." It essentially adjudicated all claims between the parties, but the district court indicated therein that by separate order to follow it would set aside the conveyances and create a lien on behalf of Mesa on the real property in question. Under the particular circumstances of this case, we feel that it is proper to address, however briefly, the problems arising out of the December 26th rulings.

ties so conveyed were owned by Coniglio and Locke and their respective wives by the entirety. *See Losey v. Losey,* 221 So.2d 417 (Fla.1969). A judgment against one spouse is not enforceable against property owned by the entirety, *Winters v. Parks,* 91 So.2d 649 (Fla.1956), and, therefore, such property is not subject to the fraudulent conveyance law, *cf. Foster v. Thornton,* 131 Fla. 277, 179 So. 882 (1937); *Kitchens v. Kitchens,* 142 So.2d 343 (2nd DCA Fla.1962).

Mesa does not question this legal analysis, but correctly notes that the district court never set the conveyances aside as it had originally intended. The appellants directed the court's attention to the relevant Florida law subsequent to the October 13th order. Thus, on December 26, in addition to imposing a lien, the district court ordered Coniglio to hold in trust for Mesa his interest in the real property which had been conveyed to him and his wife by the Lockes.[8] In so doing, the court employed an alternative equitable remedy which has long been recognized by the Florida courts. *See Bell v. Smith,* 159 Fla. 817, 32 So.2d 829 (1947); *Barrow v. Bailey,* 5 Fla. 9 (1853). We cannot fault the district court for adopting this course of action in an effort to grant Mesa the full relief to which it is entitled. *See* Fed.R.Civ.P. 54(c).

Finally, the appellants assign error in the district judge's allowance of affidavits as a basis for determining reasonable attorneys fees. We perceive no error in the use of affidavits for such a purpose. *See, e. g., Mendoza v. City of Miami,* 483 F.2d 430 (5th Cir. 1973). Indeed, a district judge may fix attorneys fees on the basis of his own experience without the assistance of any testimony. *Bagby Land and Cattle Co. v. California Livestock Commission,* 439 F.2d 315 (5th Cir. 1971).

For the foregoing reasons, the judgment of the district court is affirmed in its entirety.

AFFIRMED.

---

**8.** Subsequent to these conveyances, Coniglio and his wife were divorced. Their ownership was thereby converted into that of tenants in common. Fla.Stat. § 689.15. *Cf. Hillman v. McCutchen,* 166 So.2d 611 (Fla.1964). We also note that Mesa's lien, and the trust imposed in its favor, were expressly made inferior to the security interest held by the Federal Land Bank of Columbia, South Carolina, a bona fide transferee.