George FARIAS, Plaintiff–Appellant,

v.

BEXAR COUNTY BOARD OF TRUST-
EES FOR MENTAL HEALTH MEN-
TAL RETARDATION SERVICES, et
al., Defendants–Appellees.

Nos. 89–5620, 90–5504.

United States Court of Appeals,
Fifth Circuit.

March 11, 1991.

Rehearing and Rehearing En Banc
Denied April 12, 1991.

Glen D. Mangum, David Garcia, Jr., Mangum & White, Inc., San Antonio, Tex., for plaintiff-appellant.

James Eddie Ingram, John T. Reynolds, Butler & Binion, and Roy R. Barrera, Sr., Roy R. Barrera, Jr., Nicholas & Barrera, San Antonio, Tex., for Bexar County Bd. of Trustees and Lopez and Rutledge.

Edward Schweninger, San Antonio, Tex., for Bexar County Bd. of Trustees.

Donald J. Walheim, San Antonio, Tex., for Alamo Heights.

Harvey L. Hardy, San Antonio, Tex., for Castle Hills.

Arthur L. Walker, Austin, Tex., for City of Olmos Park.

Charles S. Frigerio, and Baldemar A. Jimenez, Asst. City Attys., Office of the City Atty., San Antonio, Tex., for City of San Antonio.

James A. Kosub, Malinda A. Gaul, Kosub & Gaul, San Antonio, Tex., for Heard, Hall, Smith, Martin & Oliva.

Before CLARK, Chief Judge, and GARZA and DAVIS, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

George Farias sued various defendants in Texas state court alleging federal and state claims. Several of the defendants removed the case to federal court. After a bench trial, the district judge entered judgment in favor of the defendants. Following this judgment, Farias brought a new suit in state court alleging similar claims. The federal district judge enjoined the new suit under the relitigation exception to the Anti–Injunction Act. Farias appeals both the earlier judgment and the later injunction to our court. We affirm the judgment but reverse the grant of injunction.

## AN OVERVIEW

George Farias served as executive director of the Bexar County Mental Health Mental Retardation Center from October 1979 to January 1988. For more than two years, Farias worked without a written contract. Thereafter he worked under a series of written letter agreements. Farias accepted his last written employment contract in January 1987. That contract expired by its terms on August 31, 1987, and required the Center's Board of Trustees to give Farias 120 days written notice of the Board's intent not to renew.

After his contract expired on August 31, 1987, Farias worked without a contract. In November 1987, the Board appointed a committee to evaluate Farias's performance as executive director. Less than a month later, on December 8, 1987, the Board voted not to renew Farias's contract. Farias worked for thirty days after the December 8 meeting and received an additional ninety days severance pay.

In April 1988, Farias sued multiple defendants in Texas state court,[1] alleging various state and federal claims. Some of the defendants petitioned for removal to federal district court under 28 U.S.C. §§ 1441(b) and 1443 based on the fact that Farias had raised federal claims. Farias moved to remand the case to state court on the ground that some defendants had not joined the petition for removal. The district court denied Farias's motion to remand, finding that the nonremoving defendants were merely "nominal" or "formal" parties.

Meanwhile the nonremoving parties filed motions to dismiss under Fed.R.Civ.P. 12(b)(6). Farias filed a motion to strike because the nonremoving parties had never consented to removal. Farias moved, in the alternative, for an extension of time to respond. The district court denied Farias's motions and granted the motions to dismiss.

Nine days after the district court denied his motion for remand, Farias demanded a jury trial and moved, in the alternative, for a jury trial under Fed.R.Civ.P. 39(b). The defendants moved to strike Farias's jury demand under Fed.R.Civ.P. 81(c).[2] The court granted defendants' motion to strike and ordered a bench trial.

Farias filed an amended complaint on May 19, 1989. On June 19, 1989, defendants filed their amended answer. On the first day of trial, Farias objected to some affirmative defenses in the amended answer, claiming that the defenses had not been previously asserted. Defendants denied that the defenses were new. The district court refused to strike the defenses and allowed the defendants to submit evidence supporting those defenses.

After a bench trial, the judge entered final judgment in favor of defendants. Farias then filed another suit in Texas state court alleging violations of the Texas Open Meetings Act, Tex.Rev.Civ.Stat.Ann. art. 6252–17. The new state court action stems from the same transactions that led to the case now before this court. Defendants moved to enjoin the suit in state court under the relitigation exception of the Anti–Injunction Act. *See* 28 U.S.C. § 2283. Defendants also requested Rule 11 sanctions against Farias and his counsel. The district court granted the motion to enjoin but denied the request for sanctions.

### CASE NUMBER 89–5620

### REMOVAL, REMAND AND THOSE NOMINAL PARTIES

#### *Nominal Parties*

After some of the defendants petitioned

---

1. The suit named as defendants the Bexar County Board of Trustees for Mental Health Mental Retardation Services, Thomas C. Lopez, John R. Heard, Sue M. Hall, Hollis V. Rutledge, Ira Smith, Jr., Bob Martin, Dr. Damaso A. Oliva, the City of Alamo Heights, the City of Castle Hills, the City of Olmos Park, the City of San Antonio, the County of Bexar the Edgewood Independent School District, and the San Antonio Independent School District.

2. Rule 81(c) applies to removed cases and requires a party to demand a jury trial within ten days after being served with a petition for removal. In this case, the defendants filed their petition for removal on May 23, 1988. Farias demanded a jury trial on November 9, 1988, over five months late.

for removal[3], Farias moved for remand. *See* 28 U.S.C. § 1447(c). The district court denied Farias's motion, finding that the nonremoving defendants were merely "nominal" or "formal" parties. Farias challenges the district court's order on the following two grounds: (1.) all defendants named in the state court action must join in or consent to removal when the basis for removal is the district court's federal question jurisdiction and this did not happen; and (2.) even if the nominal-parties exception applies to federal question cases, the nonremoving defendants in this case are more than "nominal" or "formal" parties.

▮ "[A]ll defendants who are properly joined and served must join in the removal petition, and ... failure to do so renders the petition defective." *Getty Oil Corp., Div. of Texaco, Inc. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1262 (5th Cir.1988) (citations omitted); *see Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422, 423 (5th Cir.1990). There is an exception to this general rule, however. "Nominal" or "formal" parties need not join in the removal petition. *See Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1123 (5th Cir. 1987); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549–50 (5th Cir. Unit A Dec.1981); *Tri–Cities Newspapers, Inc. v. Tri–Cities Printing Pressmen and Assistants' Local 349, Int'l Printing Pressmen and Assistants' Union of N. Am.*, 427 F.2d 325, 327 (5th Cir.1970). To establish that non-removing parties are nominal parties, "the removing party must show ... that there is no possibility that the plaintiff would be able to establish a cause of action against the non-removing defendants in state court." *B., Inc.*, 663 F.2d at 549.

### *Diversity/Federal Question, Same Rule Applies*

▮ Because the basis for removal jurisdiction in this case was federal question jurisdiction, Farias contends the nominal parties exception is not applicable. The nominal party cases in our circuit have dealt solely with diversity jurisdiction. *See, e.g., Robinson*, 808 F.2d 1119 (5th Cir.1987); *Green v. Amerada Hess Corp.*, 707 F.2d 201 (5th Cir.1983), *cert. denied*, 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984); *B., Inc.*, 663 F.2d 545 (5th Cir.1981); *Tedder v. F.M.C. Corp.*, 590 F.2d 115 (5th Cir.1979); *Tri–Cities Newspapers, Inc.*, 427 F.2d 325 (5th Cir.1970). Until now, the exception has not been applied to a case in which removal is based on federal question jurisdiction. The grandaddy case in our circuit dealing with nominal parties and removal is *Tri–Cities Newspapers, Inc.*, 427 F.2d 325 (5th Cir.1970). *Tri–Cities* discusses nominal parties as being those parties who are neither necessary nor indispensable to join in the action. *Id.* at 327. The *Tri–Cities* test of whether defendants are nominal parties "is whether in the absence of the [defendant], the Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to the plaintiff." *Id.* (quoting *Stonybrook Tenants Assoc., Inc. v. Alpert*, 194 F.Supp. 552, 559 (D.Conn.1961)). The test places no limitation on whether removal is based on diversity or federal question jurisdiction and neither do we[4]. Since equity is the major concern in the nominal party inquiry, no limitation should be placed on the type of jurisdiction used to remove the action from state to federal court. Similarly, the test for determining a nominal party stated above applies equally whether diversity or federal question jurisdiction is the mode of

---

**3.** The nonremoving defendants are the City of Alamo Heights, the City of Castle Hills, the City of Olmos Park, the City of San Antonio, the County of Bexar, the Edgewood Independent School District and the San Antonio Independent School District.

**4.** We recognize that *Tri–Cities* was a decision involving diversity jurisdiction but find this to be of no significance. The question for the district court is whether it would be fair to the

plaintiff to enter a judgment in the absence of the nonremoving parties. We note that our decision in this area is in accord with other cases. *See Ryan v. State Bd. of Elections of the State of Ill.*, 661 F.2d 1130, 1134 (7th Cir.1981); *Knowles v. American Tempering, Inc.*, 629 F.Supp. 832, 835 (E.D.Pa.1985). Both cases involved removal based on federal question jurisdiction and involved nominal parties.

removal. The bottom line concern in determining a nominal party is whether the plaintiff can establish a cause of action against the nonremoving defendant in state court.

### The bottom line concern answered

■ In this case, for reasons to be explained, we find the plaintiff could in no way establish a cause of action in state court against the nonremoving defendants. The only duty placed on the nonremoving defendants by Texas law is the duty to enter into a contract between them stipulating the number of the Bexar County Board of Trustees for Mental Health Mental Retardation Services to be appointed from the region. *See* Tex.Rev.Civ.Stat. Ann. art. 5547–203 § 3.01(a) (Vernon Supp. 1990). Farias contends the nonremoving defendants are liable because they were negligent in failing to establish criteria for the selection of Board members, negligent in entrusting authority to the Board of Trustees and negligent in failing to supervise or exercise any degree of control over the Board of Trustees. Although Farias sues on these grounds, no duty existed on the part of the nonremoving defendants to perform these duties. If no duty exists there can be no breach of duty and no negligence. *See Leonard v. Aluminum Co. of Am.*, 767 F.2d 134, 136 (5th Cir. 1985).

■ Citing *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (Tex.1947), Farias asserts a cause of action exists against the nonremoving defendants for negligent breach of contract in the creation of the Board of Trustees. *Scharrenbeck* does recognize this cause of action. *Id.* 204 S.W.2d at 510. The problem, however, is the cause of action is available only to the parties to the contract. *See McClendon v. T.L. James & Co., Inc.*, 231 F.2d 802, 804 (5th Cir.1956); *B & C Constr. Co. v. Grain Handling Corp.*, 521 S.W.2d 98, 102–03 (Tex.Civ.App.—Amarillo 1975, no writ). Since Farias was not a party to this contract, the cause of action is not available to him.

■ Finally on this point, Farias argues there is a common law duty in Texas to perform contracts with care, skill and faithfulness and the nonremoving defendants breach of this duty constituted negligence resulting in Farias's discharge. This duty does exist under the law of Texas regarding the "thing agreed to be done". *Scharrenbeck*, 204 S.W.2d at 510. The "thing agreed to be done" among the nonremoving defendants was the creation of a board of trustees pursuant to the provisions of Article 5547–203. This was the "thing agreed to be done" and since it only indirectly affected plaintiff (i.e. he was not a party to the agreement) he may not avail himself of this cause of action. *See generally Hart v. Aetna Casualty and Surety Co.*, 756 S.W.2d 27, 28 (Tex.App.—Amarillo 1988, no writ) (dealing with an insurer and an insured and explaining that the fiduciary duty of good faith and fair dealing between the two does not extend to a third party); *Chaffin v. Transamerica Ins. Co.*, 731 S.W.2d 728, 731–32 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (stating that an insurer's common law duty of good faith and fair dealing does not provide a remedy to an injured third-party). Accordingly, the district court was correct in deeming the nonremoving defendants nominal parties and allowing the case to proceed without their joinder in the removal petition.

### TO ERR OR NOT TO ERR IN GRANTING THE NONREMOVING DEFENDANTS MOTION TO DISMISS

While Farias's motion for remand was pending, each of the nonremoving defendants filed a motion to dismiss under Fed. R.Civ.P. 12(b)(6). The district court granted the motions to dismiss for the same reason it denied the motion for remand: Farias could not state a claim against the nonremoving defendants. Farias argues that the district court improperly dismissed the nonremoving defendants. Alternatively, Farias submits the district court should have allowed him more time to respond to the motions.

The district court had no jurisdiction over the nonremoving defendants because *these* defendants did not seek removal, contends Farias. Consequently, it had no jurisdiction to rule on the motions to dismiss. This contention, however, ignores the proposition that removal "ends the power of the state court ... because the entire case is then removed as to all parties whether joined in the petition or not." *Allman v. Hanley*, 302 F.2d 559, 562 (5th Cir.1962)[5]. The district court did not err in asserting jurisdiction over the nonremoving parties.

As stated above, Farias alternatively argues that the district court should have allowed him more time to respond to the 12(b)(6) motions. Under Fed.R.Civ.P. 6(b), the district judge had discretion to extend the time for Farias to respond. We find no abuse of this discretion, however, because the issues involved in the motions to dismiss were identical to those briefed in the motion for remand. Because Farias could not prevail against the nonremoving parties in state court they were nominal parties. After removal, Farias could not prevail against the nonremoving parties in federal court as well and they were properly dismissed by means of Fed.R.Civ.P. 12(b)(6).

## PUNCTUALITY AND THE RIGHT TO A JURY TRIAL

"Within ten days after service of the notice of filing of the removal petition" Farias was required to demand a jury trial. Fed.R.Civ.P. 81(c). On May 23, 1988, notice of removal was served on Farias. A jury trial was demanded by Farias on November 7, 1988. By not timely demanding a jury trial, Farias waived his right to a jury. *See Bush v. Allstate Ins. Co.*, 425 F.2d 393, 395–96 (5th Cir.), *cert denied*, 400 U.S. 833, 91 S.Ct. 64, 27 L.Ed.2d 64 (1970).

Nevertheless, the district judge could have ordered a jury trial under Fed. R.Civ.P. 39(b). A rule 39(b) motion is discretionary with the judge. Despite "the general principle that a court should grant a jury trial in the absence of strong and compelling reasons to the contrary", *Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1029 (5th Cir.1980), we adhere to a long line of precedent in finding no abuse of discretion. "It is not an abuse of discretion by a District Judge to deny a Rule 39(b) motion ... when the failure to make a timely jury demand results from mere inadvertence on the part of the moving party." *Bush*, 425 F.2d at 396. *See O'Malley v. United States Fidelity and Guaranty Co.*, 776 F.2d 494, 502 (5th Cir.1985); *Fredieu v. Rowan Cos., Inc.*, 738 F.2d 651, 654 (5th Cir.1984); *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1154 (5th Cir.1981); *Mesa Petroleum Co.*, 629 F.2d at 1029 (finding no abuse of discretion despite stating the "strong and compelling reasons to the contrary" principle). Farias offered no viable[6] reasons for his delay and therefore we assume the delay resulted from mere inadvertence. Accordingly, the district judge did not abuse his discretion by not granting Farias a jury trial.

## TARDY ANSWER[7] ALLOWED: ABUSE?

Defendants filed their First Amended Answer on June 19, 1989, approximately

---

**5.** Although *Allman* was a case involving removal by a federal officer, we find the quoted proposition to be true in the case at bar also. *Allman*, 302 F.2d at 562.

**6.** The reason offered by Farias for his delay in requesting a jury was that his motion for remand would be inconsistent with his jury demand. Such an argument would essentially render Rule 81 meaningless. Farias easily could have filed his jury demand subject to the court's ruling on his motion for remand. The fact he did not do so is indicative of inadvertence. The pendency of removal proceedings does not excuse the requirement of a timely jury demand. *See Galella v. Onassis*, 487 F.2d 986, 996–97 (2d Cir.1973). Farias's delay cost him a jury and the narrow discretion of the district judge was not abused in this instance. *See Blau v. Del Monte Corp.*, 748 F.2d 1348, 1357 (9th Cir.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985).

**7.** The district court actually permitted the defendants to file five separate motions to dismiss or for summary judgment in addition to the First Amended Answer. The relief requested in these motions was denied, however, and we need not decide if it was error to permit the filing of

874

one month before trial. This was exactly one month after Farias was granted leave to file his First Amended Complaint. Farias objects that the amended answer contained affirmative defenses not contained in the original answer. Specifically, he contends he was prejudiced by the allowance of the affirmative defenses of qualified and sovereign immunity to be plead in the amended answer. We do not agree.

■■■■ Defendants Original Answer claimed the defense of governmental immunity. Under the liberal pleading rules used in our federal courts, this type of notice pleading was sufficient to raise these defenses. *See Jamieson By and Through Jamieson v. Shaw,* 772 F.2d 1205, 1213 (5th Cir.1985). Moreover, "leave [to amend pleadings] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Rule 15 encourages leave to amend. "[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Carson v. Polley,* 689 F.2d 562, 584 (5th Cir.1982). The Original Answer gave Farias notice of the defenses of qualified and sovereign immunity as did the Pre–Trial order signed by his attorney. We find no abuse of discretion by the district judge and overrule this point of error.

## SOVEREIGN IMMUNITY AND THE BEXAR COUNTY MHMR CENTER

### *The decisive issue: state or local?*

■■■■ The district court concluded that the Bexar County Mental Health Mental Retardation Center was entitled to immunity against all suits to which the Eleventh Amendment applies. Unless consent is given, the Eleventh Amendment forbids suit against a state, a state agency or department of the state by citizens of the state. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). To determine if the Eleventh Amendment bar applies we "must examine the particular enti-

ty in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state itself." *Laje v. R.E. Thomason Gen. Hosp.,* 665 F.2d 724, 727 (5th Cir.1982). Our circuit has formulated the following factors to help resolve this inquiry:

(1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use the property.

*Minton v. St. Bernard Parish School Bd.,* 803 F.2d 129, 131 (5th Cir.1986).

■■■ Due to the sparsity of evidence relating to the above factors we are unable to make an inquiry into each one. Nevertheless, we will make do with the evidence which is properly before us. The statute permitting creation of the Center aids us only slightly in the resolution of whether the Center is an "agency of the state." *See* Tex.Rev.Civ.Stat.Ann. art. 5547–203 § 3.01(c) (Vernon Supp.1990). A complete reading of this section of the statute indicates "[a] community center [or a mental health mental retardation center in this case] is an agency of the state, a governmental unit, *and* a unit of *local* government...." *Id.* (emphasis ours).

The testimony[8] at trial indicated that between seventy and eighty percent of the funding for the Center came from the state, either directly or indirectly. The statute authorizing creation of the Center, however, clearly provides "that the total amount of state funds used in the operation of the facility may not exceed sixty (60) percent of the total operating budget of that facility." Tex.Rev.Civ.Stat.Ann. art. 5547–203 § 3.11(f) (Vernon Supp.1990). There is no evidence, however, "as to

these motions. If any error did occur, Farias suffered no harm and has no complaint.

**8.** Mr. Farias and the internal auditor for the Bexar County MHMR, Mr. Trevino, testified to these matters.

whether any of these [state] funds would be used to pay the judgment." *Wheeler v. Mental Health and Mental Retardation Authority of Harris County, Tex.,* 752 F.2d 1063, 1072 (5th Cir.), *cert. denied,* 474 U.S. 824, 106 S.Ct. 78, 88 L.Ed.2d 64 (1985). A significant amount of "legislatively appropriated funds does not in and of itself render ... [the center] an arm of the state." *Id.* The failure of evidence as to where funds will come from to pay an adverse judgment is a controlling factor. *See id.* at 1073.

We find it important that the authorizing statute for the Center states "[l]ocal agencies which may establish and operate community centers are a county, a city, a hospital district, a school district, or any organizational combination of two (2) or more of these." Tex.Rev.Civ.Stat.Ann. art. 5547–203 § 3.01(a) (Vernon Supp.1990). In other words, local entities created the Center. Furthermore, the Board of Trustees responsible for administration of the center, *id.* at § 3.05(a), are appointed from among "the qualified voters of the region...." *Id.* at § 3.02(a).

Although the entity can hold and use land, *id.* at § 3.11(a), and the purpose of the Center is to aid the "mentally ill and mentally retarded individuals of this state", *id.* at § 3.01A, we feel the *Wheeler* decision is controlling in this case. *Wheeler* concluded that despite these indicia that may suggest a state agency, in reality the Bexar County MHMR is "more like a county or city than an arm of the state." *Wheeler,* 752 F.2d at 1072–73. There is just too much local involvement and no evidence that an adverse judgment would interfere "with the state's fiscal autonomy." *Id.* at 1073. Accordingly, the district court erred in concluding the Center was a state agency for purposes of Eleventh Amendment sovereign immunity.

### A hollow victory

Despite this error, Farias's victory is hollow. Sovereign immunity applied only [9] to

Farias's § 1983 claims and the district court properly ruled against Farias on the merits of those claims. *See* the sections of this opinion entitled THE HANDWRITING WAS ON THE WALL and PROPERTY, LIBERTY AND DUE PROCESS. Consequently, this error was harmless and reversal is not warranted.

### QUALIFIED IMMUNITY AND THE BOARD OF TRUSTEES

In this point of error, Farias complains the district judge applied the wrong legal standard in exonerating the individual defendants from liability on the basis of qualified immunity. Government officials performing discretionary functions cannot be held liable for civil damages unless they violate clearly established constitutional or statutory rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Farias asserts the district court improperly allowed a "good faith" defense based on the defendant's subjective belief rather than focusing on objective good faith. The problem with this assertion is that the district court considers the defendants' good faith only if Farias demonstrates that the defendants violated a clearly established right. *See Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 3020, 82 L.Ed.2d 139 (1984). Good faith of the defendants was never evaluated by the district judge because he found no unlawful conduct by the defendants. *Cf. Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987) (explaining the unlawful conduct must be apparent before the objective legal reasonableness analysis is undertaken). Farias had the burden to show the individual defendants violated rights that were clearly established at the time of the conduct in issue. *Davis,* 468 U.S. at 196, 104 S.Ct. at 3020. The district judge found he did not meet this burden

---

**9.** The Eleventh Amendment cannot bar Farias's claims under Title VII, *see Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976), but it does bar his claims

under 42 U.S.C. § 1983 (the free speech and due process claims). *See Quern v. Jordan,* 440 U.S. 332, 342–43, 99 S.Ct. 1139, 1145–46, 59 L.Ed.2d 358 (1979).

and after reviewing the record we cannot say this determination was erroneous.

## THE HANDWRITING WAS ON THE WALL

▆▆▆ Farias claims he was fired as executive director because of his opposition to the purchase of a parcel of property known as the South Flores property. This property is owned by Dr. William Elizondo, a supposed "crony" of two members of the board, Lopez and Rutledge. He claims his statements to the ad hoc building committee, the board and his memorandum to the board all addressed matters of public concern and he was wrongfully discharged (in violation of his First Amendment rights) as a result of these communications. We have reviewed the record and disagree.

To establish a First Amendment violation, Farias must prove: (1) that his speech involved a matter of public concern, *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983); (2) that his interest in "commenting upon matters of public concern" is greater than defendant's interest in "promoting the efficiency of the public services [they] perform[ ]", *Pickering v. Board of Educ. of Township High School Dist. 205, Will County, Ill.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); and that his speech motivated the board's decision not to renew Farias's contract, *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). The district court ruled against Farias on the first and third issues and did not address the second issue.

In reviewing this point of error, we do not decide whether the speech involved a matter of public concern. Instead, we decide that Farias's speech did not motivate the Board's decision not to renew his contract. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). The district judge found that even assuming Farias's speech involved a matter of public

concern, it was not a motivating factor in the defendants' decision not to renew the contract. After reviewing the entire record we agree that the "handwriting was on the wall." It is apparent to us that the evidence indicated Farias's performance had lessened prior to the time of his dismissal and the actions of the board were warranted. The Center had a deficit, a lost inebriate contract with the City of San Antonio meaning lost revenues for the Center, low morale and complaints among the employees, were the reasons George Farias was discharged. Consequently, since the third prong of a First Amendment violation cannot be established, Farias cannot prevail on this issue. Even assuming there was testimony at trial which supported two disparate conclusions, the district court does not clearly err by choosing either permissible conclusion. *See United States v. Yellow Cab. Co.,* 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949); *Chaney v. City of Galveston,* 368 F.2d 774, 776 (5th Cir.1966). This finding was not clearly erroneous.[10] *See Ayers v. Western Line Consol. School Dist.,* 555 F.2d 1309, 1315 (5th Cir.1977).

## THE CONTRACT

▆▆▆ Farias contends the Board implicitly renewed his contract of employment for another full year by failing to provide notice of its intent not to renew the contract. Texas courts have held "continuance of the employment is, as a matter of law, continuation of the old contract." *Thames v. Rotary Eng'g Co.,* 315 S.W.2d 589, 591 (Tex. Civ.App.—El Paso 1958, writ ref'd n.r.e.); *see Fenno v. Jacobe,* 657 S.W.2d 844, 846 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). Texas courts enforce the terms of expired employment contracts when the employee continues to work with the approval of the employer, but the cases suggest that Farias's expired contract does not continue for a full year unless Farias can show that the parties mutually intend-

---

**10.** The standard of review of the reasons not to renew the contract is found in Fed.R.Civ.P. 52(a), the "clearly erroneous standard." *De* *novo* review is given to the "public concern" issue.

ed to renew the contract for that period of time.

An implied contract can only arise if the acts and conduct of the parties demonstrate a mutual intention to renew the contract for the intended period. *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex.1972); *Farley v. Clark Equip. Co.*, 484 S.W.2d 142, 147 (Tex.Civ.App.— Amarillo 1972, writ ref'd n.r.e.). The contract in this case was essentially a letter agreement [11]. Farias even admitted this in a letter to the attorney for the Board, Mr. Rapp. The letter agreement stated Farias "may be terminated at any time by the Board without cause." The Board would give 120 days written notice of its intent not to renew.

The events which took place are exactly as the contract provided. Farias accepted the agreement and worked essentially at the whim of the Board until the notice of termination was given on December 8, 1987. The letter agreement was dated January 22, 1987 and the term of the agreement was until August 31, 1987. This was not even a one year agreement. It could not be impliedly renewed for another year. The mutual intent that we see was Farias would continue working until told otherwise; this was what the original agreement stated. The letter agreement continued until notice of termination was given. *See Thames*, 315 S.W.2d at 589. The Board allowed him to work for thirty days after notice was given and paid him ninety days severance pay. Thus, the board fulfilled its duties under the contract. The district judge did not err in his treatment of this issue.

## PROPERTY, LIBERTY AND DUE PROCESS

### *A property interest?*

Farias claims he had a property interest in the form of an impliedly renewed contract of employment. In order to establish a property interest for due process purposes, Farias must have a legit-

imate claim of entitlement to continued employment. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). To determine this property interest, we look to state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). We agree that Farias had no property interest for due process purposes.

As discussed above, the contract was extended according to its terms when Farias continued working after the term of the contract had expired. Farias was an employee at will and could be terminated without cause. *Joachim v. AT & T Information Sys.*, 793 F.2d 113, 114 (5th Cir.1986); *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 734 (Tex.1985). The hallmark of a protected property interest is an entitlement under state law that cannot be removed except for cause. *Burris v. Willis Indep. School Dist.*, 713 F.2d 1087, 1090 (5th Cir.1983) (citations and quotations omitted). Since Farias could be discharged at will, he had no protected property interest, *Thompson v. Bass*, 616 F.2d 1259, 1265 (5th Cir.1980), *cert. denied*, 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245 (1980), and no right to a due process hearing. *See Wells v. Doland*, 711 F.2d 670, 675 (5th Cir.1983).

### *No liberty interest either*

Farias also contends he had a liberty interest sufficient to require a name clearing hearing. He asserts that statements made to the media by John R. Heard, one of the Board members, impugned his good name, honor and integrity. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is dong to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). In order to acquire a liberty interest protected by the Fourteenth Amendment and give rise to a name clearing hearing, Farias must establish the:

> charges against him rise to such a level that they create a 'badge of infamy'

11. Farias signed and accepted this letter agreement.

which destroys the claimants ability to take advantage of other employment opportunities. Additionally, the claims must be false and the claimant must show that damage to his reputation and employment opportunities has in fact occurred. *Evans v. City of Dallas*, 861 F.2d 846, 851 (5th Cir.1988). The only possible stigmatizing statement made by Heard was that Farias had been fired because of his performance. As previously discussed, the district judge found this to be true and the record supports this conclusion. Moreover, Farias made no showing that damage to his reputation and employment opportunities had occurred. Consequently, no error was committed in refusing to order a name clearing hearing.

## A MERITLESS DEFAMATION CLAIM

Farias claims he was defamed by the statements of Board Member John R. Heard. Statements were made to the media over the radio and printed in the newspaper. According to Farias, Heard's statements viewed alongside Farias's own statements suggest that Farias was lying when he denied that performance had anything to do with his firing.

Farias was required to prove that others understood Heard's words in a defamatory sense. *Diesel Injection Sales and Servs., Inc. v. Renfro*, 656 S.W.2d 568, 573 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *Bergman v. Oshman's Sporting Goods, Inc.*, 594 S.W.2d 814, 816 (Tex. Civ.App.—Tyler 1980, no writ). Farias's opinion of the statements has no bearing on whether they were defamatory [12]. *Musser v. Smith*, 690 S.W.2d 56, 58 (Tex.App.— Houston [14th Dist.] 1985), *aff'd*, 723 S.W.2d 653 (Tex.1987). Oscar Villareal testified on behalf of Farias that he was listening to a local radio station when he discovered an interview with defendant-Heard. During the radio interview Heard stated Farias was terminated because the Center was changing directions. Similarly, Dottie Segura, Farias's former secretary at the Center testified on behalf of Farias about the allegedly defamatory statements. The gist of her testimony was she thought the newspaper articles were slanderous but upon further *direct* examination the following was brought out:

Q: What do you mean when you say those articles are slanderous because he was not informed of the reasons for his discharge?

A: I really don't know what I meant.

Q: Are those articles slanderous, in your mind, in any other way?

A: I guess not.

Q: I'm sorry?

A: I guess not.

MR. MANGUM [Farias's attorney]: I'll pass the witness, Your Honor.

We fail to see how Heard's words were defamatory when Farias's witnesses cannot conclusively testify they understood the speech to be defamatory.

Of further importance is the fact the district judge found Heard's statements to be substantially true. After a thorough review of the evidence before us, we concluded this finding correct. Truth of the statements is an absolute defense, *Cranberg v. Consumer's Union of U.S., Inc.*, 756 F.2d 382, 388 (5th Cir.), *cert. denied*, 474 U.S. 850, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985), and defeats any cause of action for defamation. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15 (Tex.1990); *Gulf Constr. Co. v. Mott*, 442 S.W.2d 778, 784 (Tex.Civ.App. —Houston [14th Dist.] 1969, no writ). No error was committed dealing with this issue. The defamation claim was meritless.

## ONE LAST GASP: THE DISCRIMINATION CLAIM

As a final point of error, Farias asserts the district judge erred in failing to find that defendants Hall, Heard and Smith voted not to renew Farias's contract on the basis of his national origin and sex. The lower court analyzed this issue using tradi-

---

12. Most of the information contained in the newspaper articles was obtained from Farias and constituted his opinion of the events surrounding his dismissal.

tional Title VII principles and Farias claims this analysis was erroneous. We disagree.

Farias's contention appears to be that Title VII principles are inappropriate because the statute applies only to the actions of individuals, not to groups or agencies such as the Board members which allegedly discriminated against him. This is incorrect. Title VII defines "persons" as including "one or more individuals" and "governmental agencies". 42 U.S.C. § 2000e(a). Our standard of review under Title VII is the clearly erroneous standard. *See Williams v. Southwestern Bell Tel. Co.*, 718 F.2d 715, 718 (5th Cir.1983).

██ The evidence before us demonstrates defendants did not consider Farias's national origin or gender in determining not to renew his contract. Three members of the Board of Trustees [13] that voted not to renew Farias's contract, Lopez, Rutledge and Oliva, were of Hispanic ancestry. Defendant–Smith is Afro–American and the mother of defendant-Heard is Hispanic. The new executive director employed by the Board of Trustees, Hubert, was both male and older than Farias. The interim director of the Center was Richard Trevino, an Hispanic male. Farias cites no evidence of discrimination. Accordingly, we find the ruling of the district judge on this last gasp for relief was not clearly erroneous.

## CASE NUMBER 90–5504

## SAME RODEO, DIFFERENT ARENA OR DIFFERENT RODEO? THE RELITIGATION EXCEPTION TO THE ANTI–INJUNCTION ACT

██ In his federal court complaint, Farias alleged violations of the Texas Open Meetings Act, Tex.Rev.Civ.Stat.Ann. art. 6252–17, but he did not pursue the claims at trial. Farias argues he asserted these alleged violations to show how the defendants had attained their other unlawful objectives, not to obtain relief. Following the trial, Farias filed another suit in a Texas state district court. The claims raised in the new state court action were very similar to the claims originally brought before the federal court. On motion from the defendants, the federal district judge enjoined Farias's new state court action under the relitigation exception to the Anti–Injunction Act. *See* 28 U.S.C. § 2283.

Under the Anti–Injunction Act, a federal court "may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The "to protect or effectuate its judgments" exception is known as the relitigation exception. *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988), is the controlling case dealing with this exception and controls our analysis in the case at bar.

Defendants cite us a litany of circuit court decisions relating to this issue. *See, e.g., In re Corrugated Container Anti–Trust Litigation*, 659 F.2d 1332, 1335 (5th Cir. Unit A Oct. 1981), *cert. denied*, 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982); *Donelon v. New Orleans Terminal Co.*, 474 F.2d 1108, 1114 (5th Cir.), *cert. denied*, 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973); *Woods Exploration & Producing Co., Inc. v. Aluminum Co. of Am.*, 438 F.2d 1286, 1312 (5th Cir.1971), *cert. denied*, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972). We do not decide whether these cases are still good precedent after *Chick Kam Choo*. As stated, we decide only that *Chick Kam Choo* controls the disposition of this issue. "The relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to *and decided* by the federal court." *Chick Kam Choo*, 486 U.S. at 147, 108 S.Ct. at 1690 (emphasis ours). "[A]n essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings *actual-*

---

**13.** Six of the nine individuals on the Board, Oliva, Rutledge, Lopez, Heard, Berriozabal and Casias, were of Hispanic descent.

*ly* have been decided by the federal court." *Id.* at 148, 108 S.Ct. at 1690 (emphasis ours). "[T]his prerequisite is strict and narrow." *Id.* "[T]he fact that an injunction *may* issue under the Anti–Injunction Act does not mean that it *must* issue." *Id.* at 151, 108 S.Ct. at 1692 (emphasis in original).

The issues dealing with the Texas Open Meetings Act were not "actually decided" by the district court in this case. Although Farias raised these claims in his complaint, they were not decided by the trial court. Consequently, under *Chick Kam Choo,* what looks like the same rodeo in a different arena is really a different rodeo for relitigation exception purposes. The *Chick Kam Choo* inquiry is whether the "claims or issues ... actually have been decided by the federal court." *Id.* at 148, 108 S.Ct. at 1690. The grant of injunction in favor of defendants must be reversed.

We add, however, that because it was decided the federal district court improperly enjoined the state district court, this does not mean the state district court will not decide the former action is a bar to the latter action under principles of res judicata. Texas employs several tests for determining whether a prior action operates as a bar for purposes of res judicata. *See, e.g.,* W. Dorsaneo, 5 Texas Litigation Guide § 131.06[4][b][ii][A]–[E] (1990) (discussing the various approaches). This case may fit one of those tests.

### CONCLUSION

Finally, we end this discussion. Case number 89–5620 is AFFIRMED in all respects. Case number 90–5504, dealing with the relitigation exception to the Anti–Injunction Act and the granting of an injunction to enjoin the state district court litigation, is REVERSED.

CLARK, Chief Judge, dissenting:

Federal Rules of Civil Procedure 38 and 39 preserve and embody the right to a trial by jury as guaranteed by the Seventh Amendment. *See* Fed.R.Civ.P. 38(a). Rule 39(b) provides: "[N]otwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion

upon motion may order a trial by a jury of any or all issues." Fed.R.Civ.P. 39(b). In discussing a district court's discretion under Rule 39(b), this court has recently stated that " '[t]echnical insistence upon imposing a penalty for default [under Rule 38] by denying a jury trial is not in the spirit of the rules.' " *Daniel Int'l Corp. v. Fischbach & Moore, Inc.,* 916 F.2d 1061, 1066 (5th Cir.1990) (quoting 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2334 at 115–16 (1971)). The majority affirms the district court's denial of Farias' motion for a jury trial on the basis of this circuit's rule that a district court's denial of a Rule 39(b) motion is not an abuse of discretion when the failure to make a timely jury demand is the result of "mere inadvertence."

On November 9, 1988, Farias filed a motion styled "Demand For Jury Trial Or, In The Alternative, Motion For Jury Trial." In that motion, Farias not only attempted to invoke the right to demand a jury trial under Rule 81(c), but also expressly invoked the district court's discretion to grant a jury trial under Rule 39(b). Farias filed this motion within ten days after the district court denied his motion to remand the case. It was filed more than eight months before the case was scheduled for trial. Defendants did not respond to Farias' motion until more than six months after it was filed. The district court did not strike Farias' jury demand/motion until approximately three weeks before trial. The district court's order granting defendants' motion to strike Farias' jury demand/motion states only: "[T]he Court finding said Motion to be meritorious, hereby ORDERS that Plaintiff's *demand* for a jury be struck, and that this cause be heard without a jury on its scheduled date. Fed.R. Civ.P. 81." (Emphasis supplied.)

Notwithstanding our "mere inadvertence" rule, this circuit's cases construing Rule 39(b) demonstrate that a district court must at least consider more than the movant's inadvertent untimeliness under Rules 38(b) and 81(c). *See, e.g., Daniel,* 916 F.2d at 1066; *Pinemont Bank v. Belk,* 722 F.2d 232, 238 (5th Cir.1984); *Cox v. C.H. Masland & Sons, Inc.,* 607 F.2d 138, 143–44 (5th Cir.1979). This court cannot review a

district court's denial of a Rule 39(b) motion without some explanation of the district court's reasons for refusing to exercise its discretion to grant a jury trial. The district court's order gives none.

In today's case, the district court's order is simply too opaque for us to review. Moreover, the district court's bare citation to Rule 81, which applies to jury demands under Rule 38 rather than to motions under Rule 39(b), suggests that the district court did not exercise its discretion under Rule 39(b). Farias filed his Rule 39(b) motion well in advance of trial. Defendants make no effort to show prejudice resulted from Farias' untimely jury demand or from his motion filed more than eight months before the case was tried. For all that we can tell on this record, the delay in ruling on Farias' motion was more due to defendants' late response to Farias' motion than to its timing. Because the district court's order fails to explain adequately why the court denied Farias' motion and because the record shows that the district court failed to exercise its discretion under Rule 39(b), I cannot affirm the result of the bench trial. Therefore, I respectfully dissent.