George FARIAS, Appellant,

v.

**BEXAR COUNTY BOARD OF TRUSTEES FOR MENTAL HEALTH MENTAL RETARDATION SERVICES, Appellees.**

No. 04–92–00441–CV.

Court of Appeals of Texas,
San Antonio.

April 28, 1993.

Rehearing Denied June 15, 1993.

Glen D. Mangum, Law Offices of Glen D. Mangum, San Antonio, for appellant.

James E. Ingram, James M. Parker, Jr., Butler & Binion, L.L.P., San Antonio, for appellee.

REEVES, C.J., and CHAPA and RICKHOFF, JJ.

## OPINION

RICKHOFF, Justice.

This is an appeal from a summary judgment granted against appellant George Farias, former director of appellee Bexar County Board of Trustees for Mental Health Mental Retardation Services ("the Board"). Farias initially brought suit in state district court challenging the Board's decision not to renew his employment contract. The petition alleged various federal constitutional violations as well as violations of the Texas Open Meetings Act.[1] The Board subsequently removed this case ("Farias I") to federal district court. After the federal court entered judgment in Farias I in favor of the Board and the judgment was affirmed at the appellate level, Farias brought the present suit ("Farias

---

1. Tex.Rev.Civ.Stat.Ann. art. 6252–17 (Vernon 1970 & Pamph.1993).

II") in state court. His claims in Farias II were based solely on violations of the Texas Open Meetings Act. The state court subsequently granted summary judgment in Farias II in favor of the Board and this appeal followed.

In one point of error, appellant contends summary judgment in the present case was in error because (1) it was improperly predicated on counsel for appellant's failure to appear at the summary judgment hearing; and (2) the Board failed to establish as a matter of law any of its defenses to appellant's causes of action. Because we find the Board is entitled to summary judgment as matter of law based on its defensive theory of res judicata, we affirm the trial court's order granting summary judgment.

## FACTS/BACKGROUND

The Bexar County Mental Health Mental Retardation Center was created in 1966 pursuant to TEX.REV.CIV.STAT.ANN. arts. 5547–202 & 203 to provide services to the mentally ill and mentally retarded, and to those impaired by substance abuse. The governing body of the Center is the Bexar County Board of Trustees for Mental Health Mental Retardation, appellee in the present suit.

In December of 1987, the Board of Trustees met in executive session and voted not to renew the contract of the then Executive Director of the Center, George Farias. Farias subsequently brought suit against the Board as an entity and seven of its trustees in state court, alleging that the Board wrongfully terminated his employment in violation of the United States Constitution and the Texas Open Meetings Act.

The entire suit ("Farias I") was subsequently removed to the United States District Court for the Western District of Texas on May 21, 1988. Farias thereafter filed his First Amended Complaint in Farias I on May 19, 1989, again alleging numerous federal constitutional violations as well as violations of the Texas Open Meetings Act.

The parties tendered a Joint Proposed Pre–Trial Order on June 15, 1989. In that order, Farias claimed that "... the decision to discharge him was made in violation of the provisions of the Texas Open Meetings Act." Submitted as a contested issue of law was "whether Defendants violated any provision of the Texas Open Meetings Act ..." Submitted as a contested issue of fact was "whether the vote to not renew the Plaintiff's contract was taken in violation of the Texas Open Meetings Act."

After completing his opening argument, appellant offered evidence from six different witnesses concerning alleged violations of the Act involving transactions made the basis of the present suit.

On July 22, 1989, Judge Garza entered findings of fact and conclusions of law concerning Farias' claims. On August 29, 1989, Judge Garza entered judgment that Farias take nothing from the Board.

After rendition of the judgment in Farias I, and while that case was on appeal to the Fifth Circuit Court of Appeals, Farias filed the present action in state court. The Board subsequently filed a motion in federal district court under the relitigation exception to the Anti–Injunction Act, 28 U.S.C. section 2283, seeking to enjoin Farias from seeking relief in state court. The motion was granted and an injunction issued.

On appeal, the Fifth Circuit Court of Appeals affirmed the underlying decision that Farias was not entitled to any relief, but reversed the injunction under the relitigation exception of the Anti–Injunction Act. *See Farias v. Bexar Cty. Bd. of Trustees for Mental Health Mental Retardation Services*, 925 F.2d 866 (5th Cir. 1991). Farias subsequently filed a Petition for Writ of Certiorari in the Supreme Court of the United States, which was denied on October 7, 1991. *See* — U.S. —, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991).

Free of the injunction, Farias filed his First Amended Petition in state court solely against the Board as an entity. On July 31, 1991, the Board filed its First Amended Original Answer and its first Motion for Summary Judgment, the latter of which was based on grounds of res judicata. On October 31, 1991, Judge Carol Haberman announced in open court her decision to

grant the motion for summary judgment, and thereafter signed the order on November 7, 1991.

On December 5, 1991, Farias filed a motion for new trial, seeking to overturn the summary judgment. After hearing further argument, Judge Haberman retracted her prior order and reset the case for jury trial.

On January 29, 1992, Farias filed his Second Amended Original Petition, which sought recovery for his "actual" damages and also made a claim for punitive damages. Specifically, Farias claimed a violation of the Open Meetings Act requesting reinstatement and compensatory damages of $1,436,000 for "lost salary and other benefits of his employment, damages caused to Plaintiff's reputation, and damages for mental anguish and emotional distress as well as punitive damages allegedly caused by violation of the Open Meetings Act."

The Board filed its Second Amended Motion for Summary Judgment on March 30, 1992, raising the defenses of res judicata and collateral estoppel. The motion further argued Farias did not have a cause of action for "damages" under the Open Meetings Act, and that the Tort Claims Act barred the types of recovery sought by him.

Counsel for Farias did not appear at the hearing on the motion for summary judgment, and the trial court granted the motion without hearing argument. The order does not specify the grounds upon which judgment was granted.

## SUMMARY JUDGMENT "BY DEFAULT"

■ Farias first argues the trial court erred by granting summary judgment "by default." More specifically, appellant alleges error with respect to the summary judgment on grounds it was improperly predicated on appellant's failure to appear at the summary judgment hearing.

In support of his argument that summary judgment was granted "by default," Farias cites *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671

(Tex.1979). In *Clear Creek*, the Texas Supreme Court held that a trial court may not grant a motion for summary judgment "by default" based on the non-movant's failure to respond to the motion when the movant's summary judgment proof is legally insufficient. *Id.* at 678.

Contrary to the Board's assertions, however, Farias does not argue the motion for summary judgment was granted "by default" based on appellant's failure to respond to the motion; the record establishes, and Farias concedes, that unlike the movant in the *Clear Creek* case, he did in fact file a written response to the summary judgment. Rather, Farias argues the summary judgment was "by default" based on his failure to **appear** at the summary judgment hearing. In the language of Farias' brief, "[i]f the failure of the non-movant to file a written response or answer does not justify the trial court in granting the motion, then neither does the non-movant's failure to appear at the hearing on the motion."

■ We agree with the proposition that a trial court may not grant a motion for summary judgment "by default" based solely on the non-movant's failure to **appear** at the hearing on the motion. In the present case, however, the record evinces no proof that the court in fact based his ruling granting summary judgment on this ground. Farias argues that a reading of the hearings of both appellant's Motion for New Trial and Amended Motion for New Trial demonstrates that the court in fact based its decision to grant appellee's motion for summary judgment on appellant counsel's failure to appear. We have reviewed the hearings and conclude there is no evidence to support Farias' contention. Therefore, we cannot say that the summary judgment order was granted "by default."

## OTHER DEFENSES

Having found the summary judgment order was not granted "by default," we must now determine whether proof supporting the motion was sufficient to entitle the

Board to a summary judgment on the issues expressly presented to the trial court.

■ Since the trial court's judgment does not specify the ground relied upon for its ruling, the summary judgment must be affirmed if any of the theories expressly presented to the court are meritorious. *See, e.g., Zimmelman v. Harris County,* 819 S.W.2d 178, 181 (Tex.App.—Houston [1st Dist.] 1991, no writ); *Price v. Texas Employer's Ins. Ass'n,* 782 S.W.2d 938, 942 (Tex.App.—Tyler 1989, no writ); *City of Coppell v. General Homes Corp.,* 763 S.W.2d 448, 451 (Tex.App.—Dallas 1988, writ denied). In the present case, the court could have disposed of the case on one of several issues, including: (1) whether res judicata applies to bar the second suit; (2) whether appellant's claims of damages are barred by the doctrine of collateral estoppel; (3) whether appellant's claimed damages are available under the Open Meetings Act; (4) and whether any claims for tort damages are barred under the Texas Tort Claims Act.

## I. Res Judicata

■ We first examine whether appellee's theory of res judicata was proven as a matter of law.

■ As a firmly rooted rule of "fundamental and substantial justice," res judicata is not "a mere matter of practice or procedure inherited from a more technical time than ours." *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981); *quoting Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294, 299, 37 S.Ct. 506, 507, 61 L.Ed. 1148 (1917). Because public policy demands that there be an end to litigation, the doctrine has been consistently invoked to "protect adversaries from the expense and vexation attending multiple lawsuits," "conserve[ ] judicial resources," and "foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Walsh v. Int'l Longshoremen's Ass'n Local 799,* 630 F.2d 864, 867–68 (1st Cir.1980); *see also, Allen v. McCurry,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1980).

■ Since the judgment in Farias I was rendered by a federal court, federal law applies to determine whether res judicata serves as a bar to appellant's present state court action. *See Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 718 (Tex. 1990); *Jeanes v. Henderson,* 688 S.W.2d 100, 103 (Tex.1985); Restatement (Second) of Judgments § 87 (1980).

■ Under federal law, and specifically the Fifth Circuit, the doctrine of res judicata applies if: (1) the parties are identical in both suits; (2) there is a final judgment on the merits; and (3) the same cause of action is involved in both cases. *See In re Air Crash at Dallas/Fort Worth Airport,* 861 F.2d 814, 816 (5th Cir.1988).

### i. *Same parties*

Appellants do not contest that the first prong of the test for application of res judicata is satisfied. Since the Board was a defendant in Farias I and is the defendant in Farias II, the Board is entitled to assert the bar of res judicata. *Clark v. Amoco Production Co.,* 794 F.2d 967, 973 (5th Cir.1986).

### ii. *Same claim*

Federal courts follow the "transactional test" enunciated in the Restatement (Second) of Judgments to determine whether two suits involve the same claim for res judicata application. *Jackson v. United States Postal Serv.,* 799 F.2d 1018, 1021 (5th Cir.1986); *United Home Rentals, Inc. v. Texas Real Estate Comm'n,* 716 F.2d 324, 328 (5th Cir.1983); *Hayes v. Pin Oak Petroleum, Inc.,* 798 S.W.2d 668, 672 (Tex. App.—Austin 1990, writ denied) (applying federal law). The transactional test provides that:

> The claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

*Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 870 (5th Cir.1984).

■ The existence of numerous legal theories, or the availability of numerous remedies arising out of a series of events, do not create multiple transactions for res judicata purposes. *See id.* at 871; *United Home Rentals, Inc.*, 716 F.2d at 329 n. 9.

■ Thus, legal theories and remedies do not define or determine whether the same transaction or series of transactions are at issue. Rather, the transactional test is fact oriented. *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir.1986). Claims and causes of action are defined by and are coterminous with the transactions at issue, regardless of the number of legal theories or forms of relief available to a plaintiff arising out of those transactions. *Robinson v. Nat'l Cash Register Co.*, 808 F.2d 1119, 1125 n. 10 (5th Cir.1987); *Langston v. Ins. Co. of North America*, 827 F.2d 1044, 1046 (5th Cir. 1987). The transactions or occurrences operate to constitute the claim or cause of action under the transactional test.

When applying this factual analysis to the transactions in Farias I and Farias II, it is apparent that the same "transactions" are at issue in both suits. In Farias II, Farias alleges he was wrongfully terminated by appellee as a result of a series of meetings—purportedly in violation of the Texas Open Meetings Act—that occurred on December 8, 1987, December 10, 1987, May 1987, and in certain "five-minute meetings" attended by some members of the Board. Each of these issues were transactions at issue in Farias I. We conclude that the transactions in Farias I that were allegedly related to Farias' discharge demonstrate as a matter of law that the transactions raised in Farias II are both identical and related to those litigated in Farias I.

### iii. *Final adjudication on the merits*

As a preliminary consideration, we note that the judgment in Farias I disposed of legal rights as distinguished from matters of practice, procedure, or form. *See Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 657 F.2d 939, 943 (7th Cir.1981); *Fairmont Aluminum Co. v. Comm'r of Internal Revenue*, 222 F.2d 622, 625 (4th Cir.1955). Thus, the judgment was on the merits. *Id.* Moreover, the judgment in Farias I was final, as the United States Supreme Court denied certiorari on Farias' claims. *See* — U.S. —, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991).

■ Under res judicata, a final judgment on the merits precludes parties from relitigating issues that were or *could have been* decided in the prior action. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980); *In re Air Crash at Dallas/Fort Worth Airport*, 861 F.2d 814, 816 (5th Cir.1988). Hence, res judicata would bar all claims, including Open Meetings Act claims, in Farias II that he could have advanced that arise out of the same or related transactions litigated in Farias I. *See Corpus Christi Taxpayers Ass'n v. City of Corpus Christi*, 858 F.2d 973, 976 (5th Cir.1988); *Fleming v. Travenol Laboratories, Inc.*, 707 F.2d 829, 834 (5th Cir.1983); *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 560 (5th Cir. 1983).

### "Could Have Been Brought?"

■ The rule barring all claims that could have been advanced in an earlier action, however, does not apply if the *procedural system* does not permit the litigant to raise all of those issues in one proceeding. *Nilsen v. City of Moss Point, Miss.*, 701 F.2d at 563; Restatement (Second) of Judgments § 25 Comment E. Thus, any claims which Farias was unable through no fault of his own to advance in the federal proceeding should not be barred by res judicata in the present case.

■ In this respect, Farias argues he would not have been permitted to assert the Open Meetings Act claim at the federal court since the trial court "clearly would have declined to exercise its jurisdiction [over the Open Meetings Acts claims], and did in fact decline to do so." It is beyond cavil, and Farias does not contest, that the federal court possessed jurisdiction of his claims arising out of federal law pursuant to 28 U.S.C. §§ 1331, 1343, 1441(b), and 1443, and of his state claims by virtue of

pendent jurisdiction. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Tower v. Moss*, 625 F.2d 1161, 1163 n. 1 (5th Cir.1980).

Farias does contend, however, that the federal court "clearly would have declined to exercise its jurisdiction over the Open Meetings Acts claims" as a matter of discretion. We disagree.

Farias argues that the federal court would have declined jurisdiction over the Open Meetings Act claims since, at the time he brought Farias I, state law had not definitively resolved the issue of a plaintiff's rights and remedies under the Act. *See United Mines Workers v. Gibbs*, 383 U.S, at 725–27, 86 S.Ct., at 1138–40; *Moor v. County of Alameda*, 411 U.S. 693, 710–17, 93 S.Ct. 1785, 1796–1800, 36 L.Ed.2d 596 (1973) (in its discretion, a federal court may, and even should, decline to exercise its jurisdiction when the state law claim raises an issue which has not been definitively resolved by the state courts); *see also Forsberg v. Pacific Northwest Bell Tel. Co.*, 840 F.2d 1409, 1421 (9th Cir.1988) (uncertainty under state law as to the rights and remedies of a plaintiff suing under a state statute clearly calls for a federal court to refuse to exercise its pendent state claim.)

Farias argues that it was not until the case of *Ferris v. Texas Bd. of Chiropractic Examiners*, 808 S.W.2d 514 (Tex.App.—Austin 1991, writ denied), was decided that the contours of the cause of action, especially for an employee suing a former employer under the Act, became clearer. In *Ferris*, the Austin Court of Appeals held for the first time that an employee of a governmental agency who is terminated in violation of the Open Meetings Acts is entitled to reinstatement, back pay and benefits. *Id.*

We note, however, that at the time Farias brought suit in Farias I it was possible for a plaintiff to obtain an order reversing violations of the Act and to recover costs and reasonable attorney's fees if he or she substantially prevailed. No uncertainty existed with regard to the availability of a remedy under the then-existing law—Farias could have gone into court and sought remedies under the Open Meetings Act anytime after he was fired in December of 1987. Under these circumstances, we cannot say that the federal court would clearly have refused jurisdiction of Farias' claims under the Act.

## "Abandonment of the claim?"

■ The Board contends the record demonstrates that the federal court dismissed the cause of action after Farias abandoned his claims under the Act at the federal trial proceedings. We agree.

■ The principle of res judicata works to prohibit relitigation of abandoned causes of action. *Casto v. Arkansas–Louisiana Gas Co.*, 597 F.2d 1323, 1326 (10th Cir.1979); *Clark v. Yosemite Community College Dist.*, 785 F.2d 781, 786 (9th Cir. 1986). Whether a plaintiff has abandoned a cause of action may be implied from a plaintiff's action or omissions. *Casto*, 597 F.2d at 1325.

In the present case, Farias admitted at the federal trial he had alleged violations of the Open Meetings Act in the federal suit, but not in the sense that those violations subjected the Board to liability for damages. On July 17, 1989, Farias was called for trial before United States District Judge Emilio Garza. The following dialogue took place between Farias' counsel, Glen Mangum, and Judge Garza at the beginning of the trial:

MR. MANGUM: We have a breach of contract claim, Your Honor. We have a defamation claim and we have alleged violations of the Texas Open Meetings Act but not in the sense that those violations subject the defendants to liability for damages.

THE COURT: Is that a due process argument?

MR. MANGUM: We have a due process claim also, Your Honor. Moreover, counsel for appellant stated in open court he was "not asserting claims for damages" under the Open Meetings Act, but was instead relying on the claimed violations

as evidence of motive and discriminatory intent.

Afterwards, Mangum commenced his opening argument, and argued:

> In any event, Mr. Farias made a statement to the board, was to asked to excuse himself again, and the board voted in executive session to not renew his contract of employment. That's the most egregious violation of the Texas Open Meetings Act that I can point the Court to.
>
> As I stated earlier, we're not contending that that subjects the individual board members to liability for damages. What we are contending is that that reflects that the unlawful motive was present, that is, a desire to retaliate against Mr. Farias for exercising his First Amendment rights and a desire to discriminate against him on the basis of his national origin, his sex and his age, depending on which faction of the board we're talking about.

Notably, Judge Garza's order and opinion granting appellee's motion for injunction to prevent litigation of Farias II specifically held:

> In the pleadings filed in this Court, Farias clearly claimed that Movants violated the Open Meetings Acts, Article 6252–17, Texas Revised Civil Statutes, in connection with their decision not to renew his contract with [appellee] in December 1987.... Although the Pre-trial Order specifically included the Open Meetings Act claim, Farias *did not pursue the claim at trial.* (emphasis added).

> \*   \*   \*   \*   \*   \*

Even though Farias chose not to pursue his Open Meetings Act claim at the trial of his federal suit, *res judicata* still operates to preclude his relitigation of that claim in state court: his state action is simply an alternative grounds [sic] of recovery for violations of the same primary rights alleged in his federal action. [citations omitted]. Farias' contention that he alleged violation of the Open Meetings Act "not for the purpose of obtaining damages or any other relief," but for evidentiary purposes only, and thus did not actually plead the Open Meetings Act claim in prior federal litigation ... is, in and of itself, simply untenable. In addition, even if Farias had not actually raised the Open Meetings Act claim in the previous federal litigation, this would not preclude the *res judicata* bar, since *res judicata* is applicable if plaintiffs were afforded the *opportunity* to allege the state grounds which constituted the same cause of action in the federal proceedings. [citations omitted] (emphasis in original).[2]

We conclude that Farias, having abandoned any claims for damages under the Act in Farias I, is now barred as a matter of law by the principle of res judicata from attempting to litigate the claim in Farias II.

Since the trial court's judgment does not specify the ground relied upon for its ruling, we need not address any of the other theories upon which the court could have disposed of the case. *See, e.g., Zimmelman v. Harris County,* 819 S.W.2d at 181; *Price v. Texas Employer's Ins. Ass'n,* 782 S.W.2d at 942; *City of Coppell v. General Homes Corp.,* 763 S.W.2d at 448.

The judgment of the court below is affirmed.

---

**2.** Although Judge Garza's granting of the injunction under the relitigation exception to the Anti–Injunction Act was subsequently reversed, the Fifth Circuit Court of Appeals specifically held that:

> because it was decided the federal court improperly enjoined the state district court, this does not mean the state district court will not decide the former action is a bar to the latter action under principles of res judicata. Texas employs several tests for the determining whether a prior action operates as a bar for purposes of res judicata (citations omitted). This case may fit one of those cases.

*Farias,* 925 F.2d at 880.