**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NATALIE CARROLL,
Plaintiff-Appellant,

v.

TOWN OF UNIVERSITY PARK,
MARYLAND; ROBERT W. WERGE;
STEPHEN S. BACON,
Defendants-Appellees.

No. 97-2529

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Joseph H. Young, Senior District Judge.
(CA-96-1626-Y)

Submitted: May 26, 1998

Decided: June 29, 1998

Before HAMILTON and MOTZ, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Mary Ann Ryan, RYAN & COYLE, Laurel, Maryland, for Appellant.
Linda S. Woolf, GOODELL, DEVRIES, LEECH & GRAY, L.L.P.,
Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Natalie Carroll appeals from the district court's order granting summary judgment in favor of Defendants in her action brought under 42 U.S.C. § 1983 (1994), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, -3 (1994). We affirm the district court's order.

I.

Carroll began employment as a probationary police officer with the Town of University Park, Maryland, on January 11, 1993. The police officer agreement as well as the relevant provisions of the Town ordinances provide that the officer is on probationary status for one year from the date of employment. Carroll's employment agreement also provides that, except as required by the Law Enforcement Officer's Bill of Rights (LEOBR), nothing in the agreement limits the ability of the Town or the Chief of Police to terminate Carroll's employment. LEOBR by its terms does not apply to probationary officers. See Md. Ann. Code art. 27, § 727(b), (c) (1996).

After Carroll began work, the senior officer in charge of the department, Lieutenant Stephen S. Bacon, began to have serious concerns about Carroll's performance as a probationary officer. This concern was due to several complaints filed against Carroll by Town citizens, and due to Carroll's demeanor, argumentativeness, refusal to accept constructive criticism, refusal to accept responsibility for her conduct, damaging of police property, and sloppiness in completing paperwork.

Town citizens reported that Carroll overreacted to situations and was unable to cope with being a small-town officer. In one incident, Carroll issued fourteen traffic citations to one individual. When

2

Bacon attempted to speak with Carroll about this incident, she argued with him in a raised voice. During her one year as a probationary officer, Carroll received four or five written complaints from citizens, and numerous telephone complaints which were not pursued, an unusually high number of citizen complaints to receive over a year's time according to Mayor Robert Werge.

Carroll also received two dereliction reports, one for unsafe operation of a departmental vehicle, and one for insubordination relating to her failure to follow instructions in filling out several reports. When Bacon attempted to speak with Carroll about her failure to follow instructions, she became insubordinate and argumentative, and she slammed out of the room.

Bacon prepared Carroll's annual performance review for the period January 1993 through December 1993. He rated her attitude "unsatisfactory"; stated that she needed improvement in the areas of dependability, quality of work, and relations with others; and stated that Carroll met standards in the areas of quality of work and initiative. Carroll's overall performance evaluation was "unsatisfactory." Carroll did not exceed standards in any area of performance. Bacon noted in the review that Carroll took daily work occurrences personally; spent too much time on traffic enforcement; was unable to keep her emotions in check when interacting with the citizens; was unable to communicate with her supervisors; and did not accept constructive criticism. Bacon recommended that Carroll's appointment as a probationary officer be terminated. On January 2, 1994, the Council passed a resolution extending Carroll's probationary period for 90 days. After suffering a work-related injury, Carroll went on disability leave beginning January 20, 1994.

On January 31, 1994, Carroll through counsel wrote to the Town's attorney, stating that she believed proper procedures were not followed in extending her probationary period, and also stating that Carroll believed her gender caused her to be treated more harshly than other officers. In a letter dated March 15, 1994, Carroll advised the Town that Carroll believed the Town violated her due process rights in connection with her discharge, and also stated that Carroll was in the process of filing an EEO complaint based on sex discrimination.

3

In a letter dated March 31, 1994, Bacon informed Carroll that her position as a probationary officer was terminated. **1** After Carroll's termination, the town appointed a permanent Chief of Police who hired three new probationary officers. One of the officers is a white female, who is still employed by the Town, and who has consistently received favorable performance evaluations from Bacon. That female officer has also received no citizen complaints.

On May 24, 1996, Carroll filed suit against the Town, Bacon, and Mayor Werge alleging violations of her constitutional rights under 42 U.S.C. § 1983, sex discrimination in violation of Title VII of the Civil Rights Act of 1964, and retaliatory discharge in violation of Title VII. The district court granted Defendants motion for summary judgment as to all counts.

II.

Carroll first contends that Defendants violated her right to procedural due process when they acted to extend her probationary status for ninety days, and again when they terminated her, without providing any process. Carroll had no property interest in her continued employment with the Town. Her employment agreement specifically provided that she was probationary and could be terminated at any time. The LEOBR, which provides procedural protections for law enforcement officers related to termination and disciplinary measures, by its express terms does not apply to probationary officers. See Md. Ann. Code art. 27, § 727(b), (c). Carroll began her employment with the Town on January 11, 1993, and her contract specifically provided that she would be on probationary status for one year. Accordingly, she was still on probationary status when the Town extended her ini-

_____

**1** Prior to January 23, 1994, the Town Council was responsible for approving personnel actions involving probationary officers, including discipline and terminations. However, the Council passed a resolution which removed the Council's involvement in personnel decisions, and provided that as of January 23, 1994, authority for making personnel decisions rested with the Chief of Police. Accordingly, because the Town Council appointed Bacon to be acting Chief of Police as of January 1994, the authority to terminate Carroll rested with Bacon, and Town Council approval was not needed.

4

tial probationary status by ninety days on January 3, 1994, and not within the protections of LEOBR.

Likewise, the Town resolution extending her probationary status by ninety days simply extended Carroll's initial one-year probationary period under her employment agreement, and did not change her status as a probationary employee. Nor did Carroll have any right to have the Town Council approve Bacon's decision to terminate her. In accordance with a Town resolution in effect as of January 1994, Bacon had the authority to terminate Carroll without the Town Council's approval. Accordingly, Carroll fails to show that Defendants denied her due process of law with regard to her extension of probation and her eventual termination. See Gilbert v. Homar, ___ U.S. ___, ___, 117 S. Ct. 1807, 1811 (1997); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-41 (1985); Jenkins v. Weatherholtz, 909 F.2d 105, 108-09 (4th Cir. 1990).**2**

Carroll also contends that she was denied her due process right to a name-clearing hearing. However, the comments in the dereliction reports, in the citizen complaints, and in Bacon's performance evaluation were not so stigmatizing that they impugned her"good name, reputation, honor or integrity." Board of Regents v. Roth, 408 U.S. 564, 573 (1972) (quoting Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971)); Watson v. University of Utah Med. Ctr., 75 F.3d 569, 579 (10th Cir. 1996). Nor did Carroll show that the charges were false. See Roth, 408 U.S. at 573; Farias v. Bexar County Bd. of Trustees, 925 F.2d 866, 877-78 (5th Cir. 1991). Accordingly, Carroll failed to show that she was entitled to a name-clearing hearing.

Carroll's last argument in connection with her due process claim is that Defendants violated her First Amendment rights when they terminated her after she communicated her concerns about the manner in which she was discharged and her intent to file a sex discrimination

_____

**2** Carroll argues that the extension of her probationary status was "disciplinary," thus bringing her within the protections of LEOBR. Carroll cites no authority for this proposition. Moreover, the record shows that Carroll was never formally disciplined in relation to any citizen complaints or her dereliction reports, and that the probationary extension was not meant to be a disciplinary measure.

5

charge. Carroll's letters through counsel to the Town's attorney only deal with Carroll's concerns regarding her status as an employee, a matter only of personal interest. See Connick v. Myers, 461 U.S. 138, 146 (1983); DiMeglio v. Haines, 45 F.3d 790, 805 (4th Cir. 1995). Accordingly, Carroll fails to show a denial of her First Amendment rights. See Board of County Cmmr's v. Umbehr, 518 U.S. 668, ___, 116 S. Ct. 2342, 2346-47 (1996); DiMeglio, 45 F.3d at 805.

III.

Carroll contends that she was subject to sex discrimination in violation of Title VII. Carroll fails to make out a prima facie case of sex discrimination because she fails to show that she was performing satisfactorily. See St. Mary's Honor Ctr. v. Hicks , 509 U.S. 502, 506 (1993). She was often argumentative and insubordinate with her supervisors, refused to accept responsibility for her actions, damaged police property several times, and was often late in turning in paperwork or did a sloppy job. She received several formal citizen complaints, as well as several other informal complaints. On one occasion, she issued fourteen tickets to one individual, and then raised her voice with her supervisor when he attempted to speak with her about it. Importantly, Carroll failed to improve her performance after being counseled.

Carroll also fails to show that similarly situated employees were treated more favorably. See Hicks, 509 U.S. at 506; McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Carroll relies on the Town's treatment of probationary officer John Gheen as a comparative. Gheen, hired around the same time as Carroll, also had disciplinary problems. He received a total of nine dereliction reports. On one occasion, Bacon recommended disciplinary action against Gheen relating to his failure to follow orders. No formal citizen complaints were filed against Gheen. Bacon stated that although Gheen had problems during his probationary period, he was generally receptive to criticism and his performance improved after being counseled. Bacon rated Gheen's overall performance as "improvement needed," and recommend that Gheen's probationary period be extended by six months. The Town Council accepted Bacon's recommendation. In February 1994, Gheen was involved in a serious car accident. How-

6

ever, before he could be disciplined for this accident, he resigned his employment with the Town.

Gheen and Carroll were treated similarly to the extent that they both received criticism and dereliction reports from Bacon. Bacon also recommended that Gheen be formally disciplined on one occasion, something he never did with Carroll. Both Gheen and Carroll had their probationary periods extended after less than favorable performance reviews from Bacon. In fact, Gheen's probationary status was extended for a longer period than Carroll's. The Town never had an opportunity to discipline Gheen or terminate him after his serious traffic accident because he resigned immediately afterwards. Accordingly, Carroll fails to show that they were treated differently. See Hicks, 509 U.S. at 506; McDonnell, 411 U.S. at 802.

Even had Carroll made out a prima facie case, however, Carroll fails to show that the Town's legitimate, non-discriminatory reasons for terminating her--argumentativeness, insubordination, refusal to accept responsibility, carelessness with paperwork--were pretextual. See Texas Dep't of Community Affairs v. Burdine , 450 U.S. 248, 254 (1981); Hicks, 509 U.S. at 507-08.[3] Accordingly, Carroll fails to show that she was subject to discriminatory treatment based on her sex in violation of Title VII.[4]

_____

[3] Carroll's equal protection claim is based on the same facts as her sex discrimination claim under Title VII. Because Carroll fails to show that she was discriminated against based on her sex in violation of Title VII, she cannot show that she was denied her right to equal protection. See Boutros v. Canton Regional Transit Auth., 997 F.2d 198, 202 (6th Cir. 1993); Keller v. Prince George's County, 827 F.2d 952, 956-63 (4th Cir. 1987) (recognizing congruence of public employee rights under Equal Protection Clause and Title VII to be free of gender discrimination).

[4] Carroll also contends that the statement of Lorraine Kincaid that it was her "impression that he [Bacon] did not like to deal with women police officers" was improperly struck by the district court. The district court found that Lorraine Kincaid did not have adequate factual support for this statement. Lorraine Kincaid is the wife of Officer David Kincaid, and has herself never worked with Bacon. Affidavits submitted in support of a summary judgment motion should be based upon personal knowledge. See Fed. R. Civ. P. 56(e). Although statements in affidavits

7

IV.

As to the claim of retaliatory discharge, even assuming Carroll made out a prima facie case, the Town came forth with legitimate, non-discriminatory reasons for terminating her. See Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994); Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). Carroll fails to show that these legitimate reasons are pretextual, and that retaliation for her threat to file a discrimination claim was the real reason for her termination. See Hicks, 509 U.S. at 514-15.

We affirm the district court's order granting summary judgment to Defendants. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

_____

can include inferences and opinions, those inferences must be based on personal knowledge and have a factual foundation. See Drake v. Minnesota Mining & Mfg. Co., 134 F.3d 878, 887 (7th Cir. 1998). Here, Lorraine Kincaid failed to provide adequate factual support for her statement of opinion regarding Bacon, and thus this portion of her affidavit was properly struck.

8